No. 24-10397

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

FU JING WU,

*Petitioner-Appellant*

v.

CHUN LIU,

*Respondent-Appellee*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 23-21541-CV-WILLIAMS

## APPELLANT'S OPENING BRIEF

**BARAKAT + BOSSA, PLLC**
*Attorneys for Defendant-Appellant*
2701 Ponce de Leon Blvd., Suite 202
Coral Gables, Florida 33134
Tel (305) 444-3114

By: */s/ Brian Barakat*
    **BRIAN BARAKAT**
    Florida Bar No. 457220
    barakat@b2b.legal
    **JOCELYNE A. MACELLONI**
    Florida Bar No. 92092
    jmacelloni@b2b.legal

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

Appellant Fu Jing Wu ("Wu"), by and through the undersigned counsel certifies that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 as well as Eleventh Circuit Rule 26.1:

A. *Parties*

    1.    Lam, Wai Kin Benny, *Defendant*;

    2.    Liu, Chu, *Plaintiff, Respondent, and Appellee*;

    3.    Persons within the putative class identified in Plaintiffs' First Amended Class Action Complaint (the "Complaint"). Plaintiffs' Complaint defines the putative class as: "all persons who own and hold a membership interest in [Florida Immigration Building Funding, LLC]." *See* Compl. [D.E. 08-18] at ¶ 95. The individual members of the putative class are unknown to Appellant but are presumably known by Appellee.

    4.    Wu, Fu Jin a/k/a Leo Wu, *Defendant, Petitioner, Appellant*;

B. *Counsel*

    5.    Barakat + Bossa, PLLC, *Counsel for Defendant, Petitioner, Appellant*;

    6.    Barakat, Brian, *Counsel for Defendant, Petitioner, Appellant*;

    7.    Barry S. Turner, P.A., *Counsel for Plaintiff, Respondent, and Appellee*;

    8.    Feldman, Jonathan S., *Counsel for Plaintiff, Respondent, and Appellee*;

    9.    Macelloni, Jocelyne A., *Counsel for Defendant, Petitioner, Appellant*;

10.    Phang & Feldman, P.A., *Counsel for Plaintiff, Respondent, and Appellee*;

11.    Read, Alexis S., *Counsel for Plaintiff, Respondent, and Appellee*;

12.    Read Law PLLC, *Counsel for Plaintiff, Respondent, and Appellee*;

13.    Turner, Barry S., *Counsel for Plaintiff, Respondent, and Appellee*;

*C. Trial Court*

14.    Rebull, Thomas J., *Circuit Court Judge for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida*;

15.    Reid, Lisette Marie, *Magistrate Judge for the United State District Court for the Southern District of Florida*;

16.    Williams, Kathleen M., *District Judge for the United States District Court for the Southern District of Florida*.

By: */s/ Brian Barakat*
    **BRIAN BARAKAT**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant, Fu Jing Wu, pursuant to Federal Rule of Appellate Procedure 34(a), as well as 11th Circuit Rule 28-1(c), respectfully requests an opportunity to present oral argument on the issues presented in this appeal. Appellant and Appellee fervently dispute the underlying facts presented in this appeal, as well as the application of the law (and indeed, the applicable law itself) to those facts. Moreover, this appeal presents complex legal issues pertaining to the Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, for which the law from this Circuit is relatively scant, and as such, are likely to recur in future appeals before the Court. Accordingly, Appellant is of the position that oral argument would significantly aid the Court's adjudication of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS .................................................................................... v

TABLE OF CITATIONS ................................................................................... vii

STATEMENT OF JURISDICTION ..................................................................... 1

STATEMENT OF THE ISSUES .......................................................................... 2

    I.  Whether the District Court erred by holding that the Arbitration Agreement did not constitute an agreement in writing falling under the New York Convention for jurisdictional purposes under *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005). ................................................................ 2

    II.  Whether the District Court erred by failing to recognize that the Arbitration Agreement delegated the question of arbitrability to the arbitral tribunal. ...... 2

    III. Whether the District Court erred in denying Wu's Motion to Compel Arbitration. ....................................................................................................... 2

STATEMENT OF THE CASE .............................................................................. 2

    A. Relevant Factual Background and the Action's Inception in State Court. ...... 2

    B. Liu's Refusal to Arbitrate this Dispute and Wu's Removal of the State Action to the District Court. ............................................................................ 6

STANDARD OF REVIEW .................................................................................. 7

SUMMARY OF THE ARGUMENTS ................................................................. 7

ARGUMENT AND CITATIONS TO AUTHORITY ........................................... 8

    I.  THE DISTRICT COURT ERRED BY FAILING TO CONSIDER WHETHER THE ARBITRATION AGREEMENT RELATES TO LIU'S CAUSES OF ACTION. ................................................................................. 8

II. THE DISTRICT COURT ERRED BY FAILING TO RECOGNIZE THAT THE ARBITRATION AGREEMENT DELEGATED THE QUESTION OF ARBITRABILITY TO AN ARBITRAL TRIBUNAL...................................15

III. THE DISTRICT COURT ERRED IN HOLDING THAT WU COULD NOT ENFORCE THE ARBITRATION AGREEMENT UNDER WELL-RECOGNIZED EXCEPTIONS TO THE SIGNATORY REQUIREMENT…....................................................................................16

  A. Liu is Equitably Estopped from Evading the Arbitration Agreement......18

    1. Liu Relies on and/or Makes Reference to the Purchase Agreement in Asserting Each of His Claims against Wu..................................19

    2. The Amended Complaint Alleges Interdependent and Concerted Misconduct by Both Wu and FIBF................................................23

  B. Agency Principles Require that Liu's Claims against Wu be Arbitrated. 26

  C. Wu Can Invoke the Arbitration Agreement as a Third-Party Beneficiary. 28

CONCLUSION .......................................................................................................30

CERTIFICATE OF COMPLIANCE .....................................................................31

CERTIFICATE OF SERVICE...............................................................................31

# TABLE OF CITATIONS

## Cases

*Airbnb, Inc. v. Doe*,
    336 So. 3d 698 (Fla. 2022) .............................................................15

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624, 129 S.Ct. 1896 (2009) ...........................................17

*Bailey v. ERG Enterprises, LP*,
    705 F.3d 1311 (11th Cir. 2013)..............................18, 19, 20, 23, 24

*Bautista v. Star Cruises*,
    396 F. 3d 1289 (11th Cir. 2005).........................................1, 9, 11

*Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*,
    249 So. 3d 765 (Fla. 1st DCA 2018) ............................................22

*Bess v. Check Express*,
    294 F.3d 1298 (11th Cir. 2002).......................................................7

*Bochese v. Town on Ponce Inlet*,
    405 F.3d 964 (11th Cir. 2005)........................................................28

*Chemaly v. Lampert*,
    Case No. 23-cv-24257-BLOOM/Torres, _F. Supp. 3d _, 2024 WL 663654
    (S.D. Fla. Feb. 16, 2024) ...............................................................10

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736, 143 S.Ct. 1915 (2023) ..............................................1

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
    358 F.3d 1286 (11th Cir. 2004).....................................................8, 9

*G.E. Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless Steel USA, LLC*,
    140 S.Ct. 1637 (2020) .............................................................10, 16

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) .............................. 16, 17

*Gunson v. BMO Harris Bank, N.A.*,
    43 F. Supp. 3d 1396 (S.D. Fla. 2014) ....................................................... 24, 25

*Harrison v. NCL (Bahamas) Ltd.*,
    691 F.3d 1308 (11th Cir. 2012) ........................................................................ 1

*In re Humana Inc. Managed Care Litigation*,
    285 F.3d 971 (11th Cir. 2002) ....................................................................... 19

*It Works Mktg., Inc. v. Melaleuca, Inc.*,
    2021 WL 1650266 (M.D. Fla. Apr. 27, 2021) ............................................. 21

*Koechli v. BIP Int'l., Inc.*,
    870 So. 2d 940 (Fla. 1st DCA 2004) ........................................................... 26

*Lawson v. Life of the South Ins. Co.*,
    648 F. 3d 1166 (11th Cir. 2011) ................................................................... 17

*Leidel v. Coinbase, Inc.*,
    729 F. App'x. 883 (11th Cir. 2018) .................................................. 21, 22, 26

*Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust Co., FSB*,
    No. 09-81143, 2010 WL 2889932 (S.D. Fla. July 21, 2010) ....................... 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ...................................... 16

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) ...................................................................... 17

*Ocwen Financial Corp. v. Holman*,
    769 So. 2d 481 (Fla. 4th DCA 2000) ........................................................... 26

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
    902 F.3d 1316 (11th Cir. 2018) ..................................................... 1, 12, 13, 14

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
 CA 16-0378-KD-C, 2016 WL 7423406 (S.D. Ala. Nov. 21, 2016) ..11, 12, 14

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
 No. 17-10944, 2022 WL 2643936 (11th Cir. July 8, 2022)....................13, 17

*PacifiCare Health Sys., Inc. v. Book*,
 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003). .............................19

*Pineda v. Oceania Cruises, Inc.*,
 283 F. Supp. 3d 1307 (S.D. Fla. 2017) ..........................................................24

*Santos v. General Dynamic Aviation Servcs. Corp.*,
 984 So. 2d 658 (Fla. 4th DCA 2008)..............................................................18

*Seifert v. U.S. Home Corp.*,
 750 So. 2d 633 (Fla. 1999) .............................................................................21

*Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810
 (Fla. 3d DCA 1985)...................................................................................28, 29

## Statutes

9 U.S.C. § 3 ......................................................................................................1

9 U.S.C. § 4 ......................................................................................................1

9 U.S.C. § 16 ....................................................................................................1

9 U.S.C. § 201 ..................................................................................................1

9 U.S.C. § 203 ..................................................................................................1

9 U.S.C. § 205 ..................................................................................................1

28 U.S.C. § 1446 ..............................................................................................1

# STATEMENT OF JURISDICTION

Under 9 U.S.C. § 16(a)(1)(A), (C), this Court has jurisdiction of all orders "refusing a stay of any action under section 3 of this title" as well as any order "denying an application under section 206 of this title to compel arbitration." *See also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S.Ct. 1915, 1918 (2023) ("When a federal district court denies a motion to compel arbitration, the losing party has a statutory right to an interlocutory appeal."); *Harrison v. NCL (Bahamas) Ltd.*, 691 F.3d 1308, 1313 (11th Cir. 2012) (Hill, J. dissenting) (finding that the Court had "appellate jurisdiction to review the district court's order denying [the defendant's] motion to compel arbitration under the Convention. That part of the order is immediately appealable under 9 U.S.C. § 16(a)(1)(C), and made applicable to the [New York] Convention [the "Convention"] by 9 U.S.C. 208.").

The United States District Court, Southern District of Florida, Miami Division, had subject matter jurisdiction pursuant to 9 U.S.C. § 205. *See also Bautista v. Star Cruises*, 396 F. 3d 1289, 1294 (11th Cir. 2005) ("[a] case covered by the [New York] Convention confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'"); *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1324 (11th Cir. 2018) ("Thus, in determining jurisdiction the district court need not—**and should not—examine whether the arbitration agreement binds**

1

**the parties before it.** Rather, the 'relates to' inquiry requires the court to determine whether, on the face of the pleadings and the removal notice, there is a non-frivolous claim that the lawsuit **relates to** an arbitration agreement that 'falls under the Convention.'") (Emphasis added) (reversed and remanded on other grounds).

As will be explained below, the District Court erred by holding that it did not have subject matter jurisdiction as a result of its finding that Wu could not compel arbitration. The District Court conflated the initial jurisdictional requirement that there be a signed writing falling under the Convention with whether Wu could compel arbitration of that agreement.

## STATEMENT OF THE ISSUES

I.   Whether the District Court erred by holding that the Arbitration Agreement did not constitute an agreement in writing falling under the New York Convention for jurisdictional purposes under *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005).

II.  Whether the District Court erred by failing to recognize that the Arbitration Agreement delegated the question of arbitrability to the arbitral tribunal.

III. Whether the District Court erred in denying Wu's Motion to Compel Arbitration.

## STATEMENT OF THE CASE

### A. Relevant Factual Background and the Action's Inception in State Court.

On March 16, 2023, Chun Liu ("Liu"), individually, and on behalf of a purported class, filed a Class Action Complaint against Fu Jing Wu a/k/a Leo Wu ("Wu") and Wai Kin Benny Lam ("Lam"). *See* D.E. 08-03. Liu filed a First Amended

Class Action Complaint (the "FAC") on March 21, 2023. *See* D.E. 08-18. The action was brought in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, bearing Case No. 2023-004625-CA-01 (the "State Action").

The FAC attempts to state causes of action against Wu and Lam sounding in fraud, violation of Florida's Securities and Investor Protection Act as well as Florida's Racketeer Influences and Corrupt Organizations Act, and conspiracy. *Id.* The gist of Liu's action against Wu concerns Liu's allegations that Wu and Lam misappropriated funds from EB-5 applicants, including Liu, who invested in Florida Immigration Building Funding LLC ("FIBF"), an entity formed by Wu to allow foreign nationals to obtain legal permanent residencies in the United States. *Id.* at ¶¶ 7-8. As alleged in the FAC, FIBF "was completely dominated and controlled by Wu who operated FIBF for his and Lam's benefit." *Id.*

To qualify for the federal EB-5 visa program, a foreign national can invest $500,000 or $1,000,000 in a commercial enterprise that creates at least ten qualified full-time U.S. positions based on that investment. *Id.* at ¶ 16. To this end, Wu applied for and received USCIS approval for the creation of the South Florida Investment Regional Center LLC ("Regional Center") in Miami, Florida, which is an organization designated by the USCIS to promote economic growth in a particular region. *Id.* at ¶¶ 20, 23. Thereafter, Wu, Lam, and the Regional Center began promoting a multi-phase project through which foreign investors could participate

in a job creating venture. *Id.* at ¶ 23. The initial phase of the venture called for foreign investors, including Liu, to invest a minimum of $500,000.00 into FIBF in exchange for one membership unit or percentage interest. *Id.* at ¶ 24.

Wu and Lam "disseminated to [Liu] and each of the Class members, *inter alia*, the offering materials, including brochures, business plans, the Loan Agreement, Private Offering and Limited Membership Interests of FIBF […], [and the] Limited Membership Interest Subscription, Sale and Purchase Agreement for FIBF [hereinafter, the "Purchase Agreement"] . . . ." *Id.* at ¶ 177. The Purchase Agreement documented and reflected Liu's purchase of a membership interest in FIBF. *See* D.E. 08-62 at 21, § 1.1.

The gravamen of the FAC is that Wu allegedly made misrepresentations that led to Liu's decision to purchase a membership interest in FIBF. *See* D.E. 08-18 at ¶¶ 24, 98, 131, 177. Wu and Lam, in turn, allegedly "asserted complete dominion over FIBF. . . looting the FIBF investment funds for their own benefit." *Id.* at ¶ 77. Moreover, the Class "that [Liu] seeks to represent is defined as: all persons who own and hold a membership interest in FIBF." *Id.* at ¶ 95. Additionally, "[a]s part of and in furtherance of the organized scheme to defraud, Wu and Lam, alone or through their agents, made material omissions and misrepresentations to [Liu] and Class members with the intent to deceive them. For example, Wu and Lam disseminated to Plaintiff and each of the Class members, *inter alia*, the offering materials,

including […] [the Purchase Agreement]. . . ." *Id.* at ¶ 177. The FAC goes on to allege that Liu "would not have invested in FIBF had the disclosed nature of their scheme, or the purposes for which investors' funds would be used." *Id.* at ¶ 187. That is, Liu expressly relies on the Purchase Agreement to bring its claims against Wu; the gist of the alleged fraud is that Liu and the purported Class members invested in FIBF in exchange for a membership interest in FIBF.

The Purchase Agreement, which Liu signed on or about October 22, 2013, contained a broad arbitration agreement, providing in pertinent part as follows:

> Any dispute, controversy or claim arising out of or relating to this Agreement, any relationship created herein, any amendment hereof, or any breach hereof, including but not limited to all issues regarding jurisdiction, existence, scope, validity, performance, interpretation, and termination, shall be [referred to arbitration].

*See* D.E. 08-62 at 30, § 4.12 (hereinafter, the "Arbitration Agreement").

On April 13, 2023, Wu filed his Motion to Compel Arbitration and to Stay this Litigation, and Incorporated Memorandum of Law (the "Motion to Compel Arbitration"). *See* D.E. 08-62. Therein, Wu argued that although Wu is not a signatory to the Purchase Agreement, which was signed by Liu and FIBF, Wu is entitled to enforce the Arbitration Agreement contained therein pursuant to well-recognized exceptions under Florida law allowing a non-signatory to enforce an otherwise valid arbitration agreement including under principles of agency, equitable estoppel, and third-party beneficiary principles. *Id.* at 1, ¶ 3.

**B. Liu's Refusal to Arbitrate this Dispute and Wu's Removal of the State Action to the District Court.**

Following Liu's refusal to arbitrate the State Action, Wu filed his Petition to Compel Arbitration with Incorporated Petition for and Notice of Removal and Application for Stay (the "Removal Notice and Petition") in the United States District Court for the Southern District of Florida, Miami Division (the "District Court"). *See* D.E. 01. The Removal Notice and Petition was brought pursuant to 9 U.S.C. §§ 3, 4, and 205 to compel compliance with the Arbitration Agreement. *Id.* at ¶ 1.[1]

On May 23, 2023, Liu filed his (I) Motion for Remand and Incorporated Memorandum of Law; and (II) Response in Opposition to Wu's Removal Notice and Petition (the "Motion for Remand"). *See* D.E. 13. The gravamen of the Motion for Remand concerned Liu's argument that there were no applicable exceptions to allow Wu to compel arbitration under the Arbitration Agreement as a non-signatory. *Id.* at 9-15. The Motion for Remand also argued affirmative defenses to the Motion to Compel Arbitration sounding in waiver. *Id.* at 16-19. On June 6, 2023, Wu filed his Response and Memorandum of Law in Opposition to the Motion for Remand. *See* D.E. 13.

---

[1] Lam's joinder in Wu's removal under 28 U.S.C. § 1446 was not required because Lam had yet to be served, inasmuch as Liu attempted to serve Lam only after the State Action was stayed on the filing of the Motion to Compel Arbitration. *See* D.E. 12 and the authority cited therein.

On January 5, 2024, the District Court entered its Order on Wu's Motion to Compel Arbitration and the Removal Notice and Petition, as well as on Liu's Motion for Remand (the "Order"). *See* D.E. 21. The Order denied Wu's Motion to Compel Arbitration and granted Liu's Motion for Remand. In doing so, and as will be explained below, the District Court necessarily confused the requirements for asserting jurisdiction under the New York Convention with whether Wu, as a non-signatory to the Arbitration Agreement, could enforce the same against Liu.

On February 5, 2024, Wu filed his Notice of Appeal, which appealed the District Court's Order denying the Motion to Compel Arbitration and the Removal Notice and Petition. *See* D.E. 24. This appeal followed.

## STANDARD OF REVIEW

This Court reviews a district court's order denying a motion to compel arbitration *de novo*. *See, e.g., Bess v. Check Express,* 294 F.3d 1298, 1302 (11th Cir. 2002).

## SUMMARY OF THE ARGUMENTS

The District Court conflated two distinct inquiries: (1) whether the Arbitration Agreement constitutes a signed writing falling under the New York Convention; and (2) whether Wu could enforce the Arbitration Agreement against Liu despite his non-signatory status to the Arbitration Agreement. This was error. The Arbitration Agreement fell under the New York Convention and Wu could apply well-

recognized exceptions under Florida law to the signatory requirement to enforce the Arbitration Agreement, including principles sounding in estoppel, agency, and third-party beneficiary principles. Moreover, the District Court erred by failing to recognize that the broad Arbitration Agreement delegated the question of arbitrability to the arbitral tribunal under the AAA Commercial Rules.

## ARGUMENT AND CITATIONS TO AUTHORITY

I. **THE DISTRICT COURT ERRED BY FAILING TO CONSIDER WHETHER THE ARBITRATION AGREEMENT RELATES TO LIU'S CAUSES OF ACTION.**

The District Court erred by holding that "there is no agreement in writing within the meaning of the Convention, and no exceptions apply which could allow the nonsignatory defendants [Wu] to compel arbitration." D.E. 21 at 5. The jurisdictional requirement that there be an agreement in writing under the Convention is an inquiry separate and apart from whether Wu could enforce the Arbitration Agreement against Liu. Thus, the District Court erred by failing to consider whether the FAC's allegations were "related to" the Arbitration Agreement.

"Article 2 of the Federal Arbitration Act ("FAA") provides for enforcement of foreign arbitration agreement and awards, and to these ends, it ratifies and incorporates the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention")]." *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290 (11th Cir. 2004) (citing to 9 U.S.C. § 201). The FAA provides

district courts with jurisdiction over "original actions 'falling under the Convention.'" *Id.* (quoting 9 U.S.C. § 203).

With respect to motions to compel arbitration under the Convention, the district court "conducts a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (internal quotations and citations omitted). This limited inquiry requires the district court to order arbitration unless "(1) the four **jurisdictional prerequisites** are not met; or (2) one of the Convention's affirmative defenses applies." *Id.* at 1294-95 (internal citations omitted) (emphasis added). As to the first part of the limited inquiry, the four jurisdictional prerequisites are as follows:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, of that the commercial relationship has some reasonable relation with one or more foreign states.

*Id.* at 1294, n. 7.

Article II, Section 2 of the Convention provides that an agreement in writing within the meaning of the Convention "shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Czarina, L.L.C.*, 358 F.3d at 1291 (quoting Convention, Art. II, Sec. 2). However, Article II, Sections 1 and 2 "address the recognition of arbitration

agreements, **not who is bound by a recognized agreement**. Article II(1) simply requires contracting states to 'recognize an agreement in writing' and Article II(2) defines the term 'agreement in writing.'" *G.E. Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless Steel USA, LLC*, 140 S.Ct. 1637, 1648 (2020) (hereinafter "*Outokumpu III*"). *See also Chemaly v. Lampert*, Case No. 23-cv-24257-BLOOM/Torres, _F. Supp. 3d _, 2024 WL 663654 at * 4 (S.D. Fla. Feb. 16, 2024) (the "Convention does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines.").

That is, when considering the existence of an agreement in writing falling under the Convention, the jurisdictional inquiry is limited to whether there is a signed arbitration agreement, not whether Wu, as a non-signatory, may ultimately enforce the Arbitration Agreement. The District Court necessarily erred in misconstruing the initial jurisdictional inquiry as to whether there exists an agreement in writing falling under the Convention, with the separate and distinct inquiry of whether Wu, as a non-signatory, could compel arbitration of that Arbitration Agreement. *See, e.g.,* D.E. 21 at 7 ("Absent an arbitral clause signed by [Wu and Liu], there is no agreement in writing as defined by the Convention, and as such the four jurisdictional prerequisites for the arbitration agreement to fall under the Convention are not met.").

Under *Bautista v. Star Cruises*, "[a] case covered by the [New York] Convention confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'" 396 F. 3d 1289, 1294 (11th Cir. 2005). That is, the Federal Arbitration Act's "broad removal provision allows a defendant to remove an action to federal court, at any time before trial, 'where the subject matter of an action or proceeding pending in a State court **relates to** an arbitration agreement falling under the Convention." *See Outokumpu Stainless USA, LLC v. Converteam SAS*, CA 16-0378-KD-C, 2016 WL 7423406 at * 3 (S.D. Ala. Nov. 21, 2016) (alterations omitted) (emphasis added) (hereinafter "*Outokumpu I*"). In *Outokumpu I*, GE Energy, a non-signatory to an arbitration agreement, argued that it properly removed the action to federal court under § 205 because the action was one that "relates to" an arbitration agreement falling under the Convention, whether or not GE Energy was a party or a signatory to the agreement. *Id.* at * 4 (recognizing a litany of cases "all of which have construed the language of § 205 broadly to mean that 'whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit.'"). Ultimately, the district court in *Outokumpo I* held that "in light of the plain language of § 205, as well as the well-reasoned circuit court decisions addressing its scope, this Court concludes that an action 'relates to' an arbitration agreement falling under the

Convention if the agreement 'could conceivably affect the outcome of the plaintiff's case.'" *Id.* at *8 (quoting *Beiser v. Weyler*, 284 F.3d 665, 670 (5th Cir. 2002)).

On appeal, this Court agreed with the District Court's broad interpretation of § 205, and

> join[ed] the Fifth, Eighth, and Ninth Circuits [holdings] that the "relates to" language of Section 205 provides for broad removability of cases to federal court. [….] Thus, as long as the argument that the case "relates to" the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction.

*Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323-24 (11th Cir. 2018) ("*Outokumpu II*"). That is, this Court held that the "initial jurisdictional inquiry **is distinct from** a determination of whether the parties are bound to arbitrate." *Id.* at 1324 (emphasis added). "Thus, in determining jurisdiction the district court need not—**and should not—examine whether the arbitration agreement binds the parties before it.** Rather, the 'relates to' inquiry requires the court to determine whether, on the face of the pleadings and the removal notice, there is a non-frivolous claim that the lawsuit relates to an arbitration agreement that 'falls under the Convention.'" *Id.* (Emphasis added).

However, the present District Court's conclusion runs afoul of the ultimate decision in *Outokumpu*. In that case, this Court reversed the district court's order granting GE Energy's motion to compel arbitration. The Court "h[e]ld that, to compel arbitration, the Convention requires that the arbitration agreement be signed

by the parties before the Court or their privities." *Id.* at 1326. Later, this Court recognized that its initial holding was erroneous:

> The Supreme Court specifically disagreed with our reading of Article II of the Convention as requiring "that the parties *actually sign* an agreement to arbitrate their disputes in order to compel arbitration." *Outokumpu III*, 140 S. Ct. at 1647-48 (emphasis in original). According to the Supreme Court, the provisions in Article II "address the recognition of arbitration agreements, not who is bound by a recognized agreement. Article II(1) simply requires contracting states to 'recognize an agreement in writing,' and Article II(2) defines the term 'agreement in writing.'" *Id.* at 1648. "Here, the three agreements at issue were both written and signed," satisfying Article II. *Id.*

*See Outokumpu Stainless USA, LLC v. Converteam SAS*, No. 17-10944, 2022 WL 2643936 at *2 (11th Cir. July 8, 2022) (emphasis in original). Ultimately, after the mandate was returned, this Court affirmed the district court's order granting GE Energy's Motion to Compel Arbitration. *Id.* at *4.

Here, the District Court never addressed the "relates to" directive set forth in § 205. Instead, the District Court misconstrued *Bautista* to require an "agreement in writing *between the parties*." As the District Court noted:

> Plaintiff concedes that three of the four requirements for an agreement to fall under the Convention are met in the present case: the arbitration clause in question provides for arbitration to occur in the U.S., the agreement arises out of a legal commercial relationship between FIBF and its members, and Plaintiff is not a citizen of the United States. (DE 13 at 6.) However, Plaintiff contends that the first requirement—that there be an agreement in writing within the meaning of the convention—is not met. (Id.) The Court agrees.

(D.E. 1-3) at 6-7. The District Court should have recognized that because "Plaintiff concedes that … the arbitration clause in question provides for arbitration to occur in the U.S. …," Liu necessarily conceded that there is an agreement in writing to arbitrate. However, the District Court failed to reach this conclusion because it impermissibly injected a "between the parties" requirement into first prong of the *Bautista* framework.

Indeed, under *Bautista*, Wu's invocation of § 205 was sufficient to invoke federal subject matter jurisdiction. The District Court simply misconstrued the *Bautista* jurisdictional requirements. Specifically, the District Court held that because Wu was a non-signatory and that no exceptions applied to allow Wu to enforce the arbitration agreement, the arbitration agreement did not "meet all four factors required for an arbitration agreement to be covered under the Convention[.]" D.E. 1-3, at 13. However, the inquiry on step 1 enunciated in *Outokumpu II* is not whether Wu can enforce the Arbitration Agreement. Rather, the proper inquiry is whether the Arbitration Agreement otherwise fell under the Convention. If so, the next step, which the District Court failed to apply, was to determine if that agreement "relates to" the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case. *Outokumpu II*, 902 F.3d at 1324. Whether or not Wu is a party or a signatory to the arbitral agreement, the District Court was required to conduct the "relates to" analysis. *Outokumpu I*, 2016 WL 7423406 at *4.

Accordingly, the District Court's conflation of the jurisdictional prerequisite that there be an agreement in writing falling under the Convention, with whether Wu could ultimately enforce that agreement, was error. Therefore, the District Court erred by refusing to compel arbitration because the four prerequisites for compelling arbitration were met.

## II.  THE DISTRICT COURT ERRED BY FAILING TO RECOGNIZE THAT THE ARBITRATION AGREEMENT DELEGATED THE QUESTION OF ARBITRABILITY TO AN ARBITRAL TRIBUNAL.

The Arbitration Agreement provides that any dispute "including but not limited to all issues regarding jurisdiction, existence, scope, validity, performance, interpretation, and termination, shall be determined" in accordance with the AAA Commercial Arbitration Rules. *See* 08-62 at 30, § 4.12. "The AAA Rules empower the arbitrator to rule on his or her jurisdiction, the scope of the arbitration agreement, and the arbitrability of any claim or counterclaim." *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 705 (Fla. 2022) (alteration and quotations omitted). That is, "incorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability." *Id.* at 705.

Here, Wu argued below that "the arbitrator has jurisdiction to make the threshold determination on arbitrability and scope. Thus. . . [the District Court] must allow the arbitrator to make the threshold determination in this case." *See* D.E. 14 at

4, n. 2. Accordingly, the District Court necessarily erred by failing to recognize that the Arbitration Agreement is itself a delegation agreement, and as such, the threshold issue of arbitrability should have been determined by an arbitral tribunal.

### III. THE DISTRICT COURT ERRED IN HOLDING THAT WU COULD NOT ENFORCE THE ARBITRATION AGREEMENT UNDER WELL-RECOGNIZED EXCEPTIONS TO THE SIGNATORY REQUIREMENT.

While Chapter I of the FAA "permits courts to apply state-law doctrines related to the enforcement of arbitration agreements. . . . [t]he text of the New York Convention does not address whether nonsignatories may enforce arbitration agreements under domestic doctrines such as equitable estoppel." *Outokumpu III*, 140 S.Ct. at 1633-34. In *Outokumpu III*, the Supreme Court was tasked with answering whether exceptions to the signatory requirement permitted under the FAA conflicted with the Convention." *Id.* at 1645. In answering the foregoing in the negative and finding no conflict, the Court held that the Convention "does not conflict with the enforcement of arbitration agreements by non-signatories under domestic-law equitable estoppel doctrines." *Id.* at 1648.

It is axiomatic that the FAA "manifests a liberal federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Whether Wu can compel Liu to arbitrate is, therefore, a "threshold inquiry of arbitrability." *See*

*Outokumpu Stainless USA, LLC v. Converteam SAS*, No. 17-10944, 2022 WL 2643936 at *5 (11th Cir. July 8, 2022) (Tjoflat, J., concurring). Further, "questions of arbitration must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

This Court has held that "[a]lthough arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum . . . the lack of a written arbitration agreement is not an impediment to arbitration." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) *abrogated on other grounds*. "[T]raditional principles of state law may allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Lawson v. Life of the South Ins. Co.*, 648 F. 3d 1166, 1170 (11th Cir. 2011) (quotations and citations omitted). That is, "state law governs that question[.]" *Id.* at 1171 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896 (2009) (holding that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel. . . .") (citations and quotations omitted)). Moreover, an arbitration agreement does not need to be signed to satisfy the written agreement requirement of the FAA as well as the Florida Arbitration

Code. *See, e.g., Santos v. General Dynamic Aviation Servcs. Corp.*, 984 So. 2d 658, 660 (Fla. 4th DCA 2008) (finding that non-signatory's assent "by words and conduct" to arbitration agreement "evinced his acquiescence to the agreement.").[2]

In the instant case, Wu argued that he could enforce the Arbitration Agreement against Liu under the following well-recognized exceptions to the signatory requirement: (A) equitable estoppel; (B) agency principles; and (C) third-party beneficiary principles. The reasons for compelling Liu to arbitration under each exception will be discussed in turn.

## A. Liu is Equitably Estopped from Evading the Arbitration Agreement.

"Equitable estoppel allows a nonsignatory to enforce the provisions of a contract against a signatory in two circumstances: (1) when the signatory to the contract relies on the terms of the contract to assert his or her claims against the nonsignatory and (2) when the signatory raises allegations of interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1320 (11th Cir. 2013). That is, "equitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid burdens that some other provisions of the contract impose. A forum selection clause

---

[2] Here, Liu has alleged that Wu not only formed FIBF but also, that "asserted complete dominion over FIBF." D.E. 08-18 at ¶¶ 7-8. It follows that Liu has alleged that Wu imposed the language of the Arbitration Agreement on all persons involved.

would be one such burden." *Id.* (internal citations omitted). As summarized by this Court:

> In all cases, the lynchpin for equitable estoppel is equity, and the point of applying it to compel [application of a contractual provision] is to prevent a situation that would fly in the face of fairness. The purpose of the doctrine is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage.... The plaintiff's actual depend[e]nce on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the sine qua non of an appropriate situation for applying equitable estoppel.

*In re Humana Inc. Managed Care Litigation*, 285 F.3d 971, 976 (11th Cir. 2002) (citations omitted) (internal quotation marks omitted), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003).

### 1. Liu Relies on and/or Makes Reference to the Purchase Agreement in Asserting Each of His Claims against Wu.

The gravamen of the Amended Complaint is that Wu allegedly made misrepresentations that led to Liu's decision to purchase a membership interest in FIBF. *See* D.E. 08-18 at ¶¶ 24, 98, 131, 177.[3] As alleged in the FAC, "FIBF was formed to raise money from potential investors who wished to participate in the United States Citizenship and Immigration Services ('USCIS' federal EB-5

---

[3] Indeed, the Amended Complaint refers to the Purchase Agreement in paragraphs 162, 165(d), and 177.

program. D.E. 08-18 at ¶ 8. Wu and Lam, in turn, allegedly "asserted complete dominion over FIBF. . . looting the FIBF investment funds for their own benefit." *Id.* at ¶ 77. Moreover, the Class "that [Liu] seeks to represent is defined as: all persons **who own and hold a membership interest in FIBF**." *Id.* at ¶ 95 (emphasis added). Additionally, "[a]s part of and in furtherance of the organized scheme to defraud, Wu and Lam, alone or through their agents, made material omissions and misrepresentations to [Liu] and Class members with the intent to deceive them. For example, Wu and Lam disseminated to Plaintiff and each of the Class members, *inter alia*, the offering materials, including […] [the Purchase Agreement]. . . ." *Id.* at ¶ 177. The FAC goes on to allege that Liu "would not have invested in FIBF had the disclosed nature of their scheme, or the purposes for which investors' funds would be used." *Id.* at ¶ 187. That is, Liu expressly relies on the Purchase Agreement to bring his claims against Wu; the gist of the alleged fraud is that Liu and the purported Class members purchased memberships in FIBF based upon Wu's misrepresentations. This transaction is reflected in the Purchase Agreement, which contains the Arbitration Agreement. Accordingly, Liu "relies on the terms of the contract to assert his or her claims against [Wu]. . . ." *Bailey*, 705 F.3d at 1320.

The District Court focused its refusal on applying the equitable estoppel exception on the incorrect notion that Liu's claims relied "on obligations otherwise imposed by law." D.E. 21 at 9 (citing to *Leidel v. Coinbase, Inc.,* 729 F. App'x. 883,

887-88 (11th Cir. 2018); *It Works Mktg., Inc. v. Melaleuca, Inc.,* 2021 WL 1650266 at *5 (M.D. Fla. Apr. 27, 2021). That is, the District Court placed emphasis on the fact that Liu did not bring a claim sounding in contract. *Id.* ("The Court finds no terms in the Purchase Agreement that [Liu] claims to have been breached or which [Liu] seeks to enforce through this suit."). However, Liu did allege that Wu and Lam "had a duty to correct their misrepresentations and the mistaken impressions that arose from their omissions of material fact." D.E. 08-18 at ¶ 182. In other words, resolution of Liu's claims asserted in the Amended Complaint necessarily "requires either reference to, or construction of, a portion of the [Purchase Agreement]. *Leidel*, 729 F. App'x. at 887.

The District Court misapplied *Leidel*. *Id.* at 10 ("Plaintiff's claims may 'touch' the Purchase Agreement, but mere but-for causation falls short of the reliance necessary to apply equitable estoppel."). This Court's reference to "but for" causation in *Leidel* concerned the scope of the arbitration agreement, not the reliance necessary for a non-signatory to assert equitable estoppel. *Leidel*, 729 F. App'x. at 887 ("The mere fact that a dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement.") (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 638 (Fla. 1999).

Here, the District Court's Order did not discuss the scope of the Arbitration Agreement and in doing so, conflated two distinct inquiries: (1) can Wu apply the doctrine of equitable estoppel to compel Liu to arbitrate; and (2) if so, do Liu's claims fall under the scope of the Arbitration Agreement, which is a "pure matter of contractual interpretation." *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. 1st DCA 2018) ("even when a non-signatory can rely on equitable estoppel to access the arbitration clause, the non-signatory can compel arbitration only if the dispute at issue falls within the scope of the arbitration clause. And the scope of the arbitration clause is a pure matter of contractual interpretation.") (internal citations, alterations, and quotations omitted). The District Court's Order did not once interpret the scope of the Arbitration Agreement and instead, lumped the two foregoing inquiries into one. This was error. Accordingly, the Court should find that the gravamen of which is to assert that Liu relied on Wu's alleged misrepresentations in entering into the Purchase Agreement. The Court should also find that resolution of Liu's claims necessarily "requires either reference to, or construction of, a portion of the [Purchase Agreement]." *Leidel*, 729 F. App'x. at 887. This is especially true because Liu seeks to represent a class of "all persons **who own and hold a membership interest in FIBF**." D.E. 08-18 at ¶ 95.

**2. The Amended Complaint Alleges Interdependent and Concerted Misconduct by Both Wu and FIBF.**

Again, the Amended Complaint alleges that "FIBF was formed [by Wu] to raise money from potential investors who wished to participate in" the USCIS EB-5 program. D.E. 08-18 at ¶ 7-8. Wu and Lam, in turn, allegedly "asserted complete dominion over FIBF . . . looting the FIBF investment funds for their own benefit." *Id.* at ¶ 77. The District Court's Order found that Wu could not avail himself of this exception because Liu did not assert a claim against FIBF—the signatory. *See* D.E. 21 at 10 ("[f]or this scenario to apply, [Liu] would need to have **also** alleged claims against FIBF, the only other signatory to the Purchase Agreement. Absent any claim against FIBF, the second circumstance in which equitable estoppel can be applied is also inapplicable.").

Although the District Court did not cite to any authority for this requirement that FIBF must be named as a party for this exception to apply, presumably, the District Court relied on *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1321 (11th Cir. 2013), which Liu relied upon in his Motion for Remand. *See* D.E. 13 at 12. In doing so, the District Court misapplied *Bailey*. There, this Court focused on the fact that the complaint did not name the signatory as a defendant **nor** did the complaint allege concerted misconduct between the signatory and the non-signatory. *Bailey*, 705 F.3d at 1321 ("The Buyers **neither** allege concerted misconduct between the Credit Suisse Entities and Ginn–LA in their complaint **nor** name Ginn–LA as a party

to this action.") (emphasis added); *see also id.* at n. 12 ("Because the Buyers do not name Ginn–LA as a party **and** do not allege that the Credit Suisse Entities acted in concert with Ginn–LA to engage in the Credit Suisse fraud, the second circumstance in which equitable estoppel applies is not implicated.") (emphasis added). The disjunctive nature of the Court's reasoning in *Bailey* necessarily requires that for the nonsignatory to avail itself of this "second circumstance[,]" the complaint must either allege concerted misconduct between the signatory and the nonsignatory or otherwise name the signatory as a party.

The other case cited by Liu in his Motion for Remand for the proposition that the signatory must be a named party is *Pineda v. Oceania Cruises, Inc.*, 283 F. Supp. 3d 1307 (S.D. Fla. 2017). *See* D.E. 13 at 12. However, like *Bailey*, the court in *Pineda* took issue with the fact that the complaint failed to allege any concerted misconduct between the signatory and nonsignatory. 283 F. Supp. 3d at 1311-12 ("Unquestionably, Toruno Pineda does not allege any misconduct against ICS, the signatory, at all. . . . [I]n each of the cases relied upon by the Defendants, the plaintiffs all either included a signatory, in addition to nonsignatories, as defendants or, at a minimum, alleged that the signatories were co-conspirators in the alleged wrongdoing."). Indeed, the *Pineda* court cited to *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1403 (S.D. Fla. 2014), where the court applied the equitable estoppel exception despite the fact that the complaint merely alleged sufficient

allegations to establish concerted misconduct and did not name the signatory as a party to the claims. *Id.* at 1402-03; *See also Morselife Foundation, Inc. v. Merrill Lynch Bank & Trust Co., FSB*, No. 09-81143, 2010 WL 2889932 at *3 (S.D. Fla. July 21, 2010) ("MLTC asserts that by dropping Merrill Lynch as the party defendant, and filing an Amended Complaint solely against MLTC, Plaintiff is engaging in a tactical ploy to try to avoid MorseLife's binding agreement to arbitrate 'all controversies' with Merrill Lynch. The Court agrees and concludes that MorseLife must arbitrate its dispute with MLTC pursuant to the 'all controversies' arbitration agreement it signed with Merrill Lynch.").

In the instant case, Liu engaged in a "tactical ploy" to only reference the Purchase Agreement in passing in the FAC, refused to attach the Purchase Agreement, and purposely did not name FIBF as a party to avoid arbitrating his claims against Wu. Despite these drafting contortions, the FAC alleges that Wu acted in concert with Lam, and allegedly "asserted complete dominion over FIBF. . ." D.E. 08-18 at ¶ 77. Accordingly, this Court should find that the District Court erred in concluding that Liu could not be equitably estopped from avoiding the Arbitration Agreement; Liu alleges concerted misconduct between Wu and FIBF, relies on the Purchase Agreement to assert claims against Wu, and/or otherwise, at a minimum, resolution of Liu's claims asserted in the FAC necessarily "requires either reference

to, or construction of, a portion of the [Purchase Agreement]." *Leidel*, 729 F. App'x. at 887.

## B. Agency Principles Require that Liu's Claims against Wu be Arbitrated.

In *Koechli v. BIP Int'l., Inc.*, 870 So. 2d 940 (Fla. 1st DCA 2004), the court compelled arbitration of a signatory's claims against non-signatories to the arbitration agreement because the nonsignatory defendants were agents of a party to the agreement, had received rights and obligations under the contract, and were being sued for their actions taken as a signatory's agents. *Id.* at 945-46; *see also Ocwen Financial Corp. v. Holman*, 769 So. 2d 481, 483 (Fla. 4th DCA 2000) ("[W]e conclude that Ocwen is a 'party' within the meaning of the arbitration clause because it received rights and obligations under the asset purchase agreement. The individual defendants as well are entitled to the protection of the arbitration clause in the contract signed by OFS because the claims against them arose solely in connection with their activities as officers and directors of that corporation."). The *Koechli* court focused on the fact that the arbitration agreement stated that "any dispute between the parties hereto" would be subject to arbitration, which included non-signatories who were officers or agents. *Koechli*, 870 So. 2d at 946.

Likewise, in the instant case, the Arbitration Agreement is broader than the one in *Koechli*, and provides that "[a]ny dispute, controversy or claim **arising out**

**of or relating to**[4] this Agreement, **any relationship created herein**[5]. . . or any breach hereof" shall be referred to arbitration. (emphasis added). Accordingly, like in *Koechli* and in *Ocwen*, the Court should find that Wu is afforded the same protection under the Arbitration Agreement as FIBF, since the claims against Wu arise out of action taken by Wu as FIBF's agent and the Purchase Agreement provided Wu rights. Specifically, in the Purchase Agreement, Liu acknowledged that "[n]either [FIBF] nor any of its agents or employees, nor any other person, has made any representation that than as contained in this Agreement. In entering this transaction, [Liu] is not relying upon any information, other than the terms of this Agreement and the other written documents delivered to it by [FIBF]." *See* D.E. 08-62 at 26, § 3.2(f). That is, Wu received the benefit of being protected by the non-reliance clause provided in the Purchase Agreement; the gravamen of this action

---

[4] "Defendant correctly points out that the 'arising out of' language is quite broad and has been interpreted to reach 'all disputes having their genesis in the contract, whether or not they implicate interpretation of performance of the contract per se.'" *Brandt v. Wis. Mach. Tool Corp.*, No. 98 C 2629, 1998 U.S. Dist. LEXIS 12521 (N.D. Ill. Aug. 5, 1998).

[5] In *Jones v. Regions Bank*, 719 F. Supp. 2d 711 (S.D. Miss. 2010), the court found that plaintiff must arbitrate claims against Lot, the processor of payments of a car loan and agent of the bank to whom plaintiff contracted, "under the contract language extending the arbitration provisions to 'any of the foregoing [Claims] arising out of, in connection with or relating to any agreement which relates to this Agreement . . . or **any relationship created by or resulting from this Agreement**,'" as, amongst other things, "plaintiff's interaction with Lot is a 'relationship created by or resulting from this Agreement." *Id.* at 717.

arises from alleged misrepresentations Wu made to induce Liu to invest in FIBF and as such, Wu directly benefits from the foregoing provision of the Purchase Agreement.

## C. Wu Can Invoke the Arbitration Agreement as a Third-Party Beneficiary.

Similarly, Wu is an intended third-party beneficiary of the Purchase Agreement, since the Purchase Agreement protects Wu from the claims presently being asserted by Liu against Wu. *See* D.E. 08-62 at 26, § 3.2(f). Under Florida law, "[w]hen a contract creates a right in favor of a third person, it is presumed that the parties intended to confer a benefit on him and he may sue for breach of the contract." *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 811 (Fla. 3d DCA 1985). Under Florida law, "the question of whether a contract was intended for the benefit of a third person is generally regarded as one construction of the contract." *Bochese v. Town on Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). To this end, the intention of the parties "is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *Id.*

In the instant case, the District Court held that Wu could not be considered a third-party beneficiary to the Purchase Agreement because "there is no specific mention of Defendant Wu in the Purchase Agreement." *See* D.E. 21 at 12. However, and importantly, "[i]t is not necessary that the third party be specifically named. It is

sufficient if the claimant is a member of the limited class which was intended to benefit from the contract." *Technicable Video Sys., Inc*., 479 So. 2d at 812. When construing the Purchase Agreement as a whole, Wu is an intended third-party beneficiary to the same, as Wu is a member of a limited class which was intended to benefit from the Purchase Agreement.

Specifically, the Arbitration Agreement provides that it applies to any claims relating to the Purchase Agreement. *See* D.E. 08-62 at 30, § 4.12 ("[a]ny dispute, controversy or claim arising out of or relating to this Agreement" shall be referred to arbitration). The Purchase Agreement also states that:

> [Liu] has had any opportunity to ask questions of and receive answers from **Representatives of [FIBF]** concerning the terms and conditions of the sale of the Purchase Units and the financial condition and prospects of [FIBF], and to obtain any additional information necessary to evaluate an investment in [FIBF].

*Id.* at 25, §3.2(e) (emphasis added). The Purchase Agreement defines "Representative" as: "with respect to any Person, any Subscriber, director, principal, partner, agent, employee, counsel, accounting, financial advisor, consultant[,] **or other representative of such Person**." *Id.* at 32, § 5.1 (emphasis added). Further, and as discussed above, by signing the Purchase Agreement, Liu represented that "[i]n entering in this transaction, [Liu] is not relying upon ay information, other than the terms of this Agreement and the other written documents delivered to [Liu] by [FIBF]." *Id.* at 26, § 3.2(f).

Given the foregoing sections of the Purchase Agreement, it is evident that "persons" other than FIBF may have had a role in Liu's decision to invest in FIBF. The Purchase Agreement was intended to provide Wu protection from being accused of making the alleged misrepresentations Liu relies on in bringing his claims against Wu in the instant controversy. Accordingly, the Court should find that the Wu is an intended third-party beneficiary to the Purchase Agreement and that the District Court erred in holding to the contrary.

## CONCLUSION

The District Court erred by failing to recognize that the Arbitration Agreement constitutes an agreement in writing within the meaning of the New York Convention; Indeed, Liu conceded as much. Moreover, the District Court erred in failing to recognize that the Arbitration Agreement delegated all threshold issues of arbitrability to be decided by an arbitral tribunal under the AAA Commercial Arbitration Rule. Finally, the District Court erred by failing to apply principles of estoppel, agency, and third-party beneficiary principles in denying Wu's Motion to Compel Arbitration. The claims asserted against Wu clearly arise out of, or otherwise relate to the Purchase Agreement signed by Liu. Accordingly, the Court should reverse the District Court's Order and compel Liu to arbitrate his claims against Wu, which fall under the scope of the broad Arbitration Agreement.

Date: April 17, 2024

Respectfully submitted,

**BARAKAT + BOSSA, PLLC**
*Attorneys for Defendant-Appellant*
2701 Ponce de Leon Blvd., Suite 202
Coral Gables, Florida 33134
Tel (305) 444-3114

By: */s/ Brian Barakat*
     **BRIAN BARAKAT**
     Florida Bar No. 457220
     barakat@b2b.legal
     **JOCELYNE A. MACELLONI**
     Florida Bar No. 92092
     jmacelloni@b2b.legal

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume and page-count limits of Fed. R. App. P. 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document consists of thirty (30) pages.

2.    This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 17th day of April 2024, a true copy of the foregoing motion was filed electronically with the Clerk of Court using the Court's

CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filer listed on the attached electronic service list.

By: */s/ Brian Barakat*
**BRIAN BARAKAT**