No. 24-10397-GG
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

FU JING WU A/K/A LEO WU,

*Defendant / Petitioner / Appellant*,

vs.

CHUN LIU,

*Plaintiff / Respondent / Appellee*.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DISTRICT COURT CASE NO. 1:23-21541-CV-KAW
_____

**APPELLEE, CHUN LIU'S ANSWER BRIEF**
_____

READ LAW PLLC
25 SE Second Ave, Suite 828
Miami, Florida 33131
Phone: (305) 209-2131
E-mail: asr@alexisreadlaw.com

PHANG & FELDMAN, P.A.
1125 NE 125th Street, Suite 303
North Miami, Florida 33161
Phone: (305) 614-1223
E-mail: feldman@katiephang.com

BARRY S. TURNER P.A.
P.O. Box 330189
Miami, Florida 33233
Phone: (305) 699-4392
E-mail: bt@bstpa.com

*Attorneys for Plaintiff/Appellee, Chun Liu*

## <u>APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed.R.App.P. 26.1 and Eleventh Cir. R. 26.1-1, 26.1-2, and 26.1-3, counsel for Plaintiff/Appellee, Chun Liu, individually and behalf of those similarly situated, hereby discloses and certifies the following list of known persons, associated persons, firms, partnerships, or corporations that have a financial interest in the outcome of this case, including all subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party in this case:

<u>Parties</u>:

- Lam, Wai Kin Benny – *Defendant*

- Liu, Chun – *Plaintiff-Respondent-Appellee*

- Wu, Fu Jin a/k/a Leo Wu – *Defendant-Petitioner-Appellant*

- Plaintiff's proposed class of "all persons who own and hold a membership interest in Florida Immigration Building Funding, LLC"

<u>Attorneys</u>:

- Barakat + Bossa, PLLC – *Counsel for Defendant-Petitioner-Appellant*

- Barakat, Brian – *Counsel for Defendant -Petitioner-Appellant*

- Barry S. Turner, P.A. – *Counsel for Plaintiff-Respondent-Appellee*

- Feldman, Jonathan S. – *Counsel for Plaintiff-Respondent-Appellee*

- Macelloni, Jocelyne Anne – *Counsel for Defendant-Petitioner-Appellant*

- Phang & Feldman, P.A. – *Counsel for Plaintiff-Respondent-Appellee*

- Read, Alexis S. – *Counsel for Plaintiff-Respondent-Appellee*

- Read Law PLLC – *Counsel for Plaintiff-Respondent-Appellee*

- Turner, Barry S. – *Counsel for Plaintiff-Respondent-Appellee*

Trial Judges:

- Rebull, Thomas J., Circuit Civil Judge, Eleventh Judicial Circuit in and for Miami-Dade County, Florida

- Reid, Lisette Marie, Magistrate Judge, United States District Court for the Southern District of Florida

- Williams, Kathleen M., District Court Judge, United States District Court for the Southern District of Florida

**Corporate Disclosure Statement**:

Appellee, Chun Liu is a natural person and has not initiated this action under a corporate capacity. As such, Appellee has no responsive corporate information to disclose.

Dated: May 29, 2024

READ LAW PLLC
25 SE 2nd Ave, Ste 828
Miami, FL 33131
P: (305) 209-2131
E: asr@alexisreadlaw.com

By: /s/ *Alexis S. Read*
    Alexis S. Read, Esq.
    Fla. Bar No. 98084

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

If the Court finds it has jurisdiction over this appeal, which Appellee respectfully contends this Court does not, Appellee requests oral argument because it will assist the Court to efficiently decide the issues on appeal. Fed.R.App.P. 34(a) and 11th Cir. R. 28-1(c).

## **TABLE OF CONTENTS**

APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...........................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

JURISDICTIONAL STATEMENT .................................................... xii

REFERENCES TO THE RECORD ...................................................... 1

STATEMENT OF THE ISSUE(S) ......................................................... 1

    1. Whether the District Court correctly held that an action based on an arbitration clause contained in the Limited Membership Interest Subscription, Sale and Purchase Agreement between FIBF and Appellee ("Purchase Agreement") – which Wu is neither a signatory nor party to – did not fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). .................................................................. 1

    2. Whether the District Court correctly held that the doctrines of equitable estoppel, agency, or third-party beneficiary status did not apply to allow Wu, a non-signatory to the Purchase Agreement, to compel arbitration of Appellee's claims under the Convention. ..................................................... 1

    3. Whether the District Court correctly denied Petition and remanded the case when the District Court lacked subject matter jurisdiction under the Convention. ............................................................................................... 1

    4. Whether the Order is appealable notwithstanding 28 U.S.C. § 1447(d). ............................................................................................................... 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF THE ARGUMENT .................................................... 4

STANDARD OF REVIEW ................................................................... 5

ARGUMENT AND CITATIONS OF AUTHORITY .......................... 5

    I. THE DISTRICT COURT DID NOT ERR BY FAILING TO CONSIDER WHETHER THE PURCHASE AGREEMENT "RELATES" TO APPELLEE'S CLAIMS BECAUSE THE FIRST JURISDICTIONAL PREREQUISITE WAS NOT MET. ......................................................... 5

    II. THE DISTRICT COURT DID NOT ERR BY FAILING TO DELEGATE THE QUESTION OF ARBITRABILITY TO AN ARBITRAL TRIBUNAL BECAUSE WU WAIVED THIS ARGUMENT BY ADVANCING IT IN A FOOTNOTE ONLY. ......................................14

    III. THE DISTRICT COURT CORRECTLY HELD THAT WU COULD NOT ENFORCE THE ARBITRATION CLAUSE UNDER THE LIMITED EXCEPTIONS TO THE SIGNATORY REQUIREMENT. 15

    A. The Doctrine of Equitable Estoppel Does Not Apply .............................18

      1. Appellee Does Not Rely on the Purchase Agreement to Assert its Claims Against Wu .........................................................................................19

      2. The Amended Complaint Does Not Allege Interdependent and Concerted Misconduct by Both Wu and Non-Party, FIBF.....................................24

    B. Agency Principles Do Not Apply ..........................................................25

    C. Wu is Not a Third-Party Beneficiary of the Purchase Agreement ...........27

    IV. THE ARBITRATION CLAUSE WAS WAIVED ...............................29

CONCLUSION ...............................................................................30

CERTIFICATE OF COMPLIANCE...............................................32

CERTIFICATE OF SERVICE.........................................................32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access Now, Inc. v. Southwest Airlines Co*.,
  385 F.3d 1324 (11th Cir.2004) ..........................................................11

*Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*,
  169 F.Supp.3d 523 (S.D.N.Y. 2016) .................................................12

*Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Florida, Inc.*,
  158 So.3d 644 (Fla. 3d DCA 2014) .......................................18, 20, 24

*Am. Family Life Ass. Co. of Columbus v. Hubbard*,
  759 F. App'x 899 (11th Cir. 2019) ....................................................11

*Am. Heritage Life Ins. Co. v. Lang*,
  321 F.3d 533 (5th Cir. 2003) .............................................................16

*AT&T Techn., Inc. v. Comm. Workers of Am*.,
  475 U.S. 643 (1986). ....................................................................16, 17

*Bahamas Sales Assoc., LLC v. Byers*,
  701 F.3d 1335 (11th Cir. 2012) ...................................................20, 23

*Bailey v. ERG Enter., LP*,
  705 F.3d 1311 (11th Cir. 2013).......................................... 18, 23, 24, 25

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) ........................... xiii, 4, 5, 7, 8, 9, 10, 12, 13, 14

*Beiser v. Weyler*,
  284 F.3d 665 (5th Cir. 2002) ..........................................12, 14, 30

*Beltre v. Micron Devices, LLC*,
  2018 WL 6614284 (S.D.Fla. Dec. 13, 2018) (Moreno, J.) ...............................25

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ......................................................27, 28

*Brown v. U.S.*,
   720 F.3d 1316 (11th Cir. 2013) .......................................................................15

*B & B Jewelry, Inc. v. Pandora Jewelry LLC*,
   247 F.Supp.3d 1283  (S.D. Fla. 2017)............................................................ xiii

*Cogdell v. Wyeth*,
   366 F.3d 1245 (11th Cir.2004) ..........................................................xii, xiv, 12

*Cont'l Tech. Serv., Inc. v. Rockwell Int'l Corp.*,
   927 F.2d 1198 (11th Cir. 1991) .......................................................................11

*Corporations AIC, SA v. Hidroelectrica Santa Rita S.A.*,
   66 F.4th 876 (11th Cir. 2023) .................................................................. xiii, 6

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
   358 F.3d 1286 (11th Cir. 2004) ..................................................................... 8,

*Dahiya v. Talmidge Intern., Ltd.*,
   371 F.3d 207 (5th Cir. 2004) .......................................................................... xii

*Del Monte Int'l, GmbH v. Ticofrut S.A.*,
   2017 WL 4876204 (S.D. Fla. Sept. 27, 2017) .................................................12

*Doe v. Princess Cruise Lines, Ltd.*,
   657 F.3d 1204 (11th Cir. 2011) .......................................................................16

*Dresdner Bank AG v. M/V OLYMPIA VOYAGER*,
   465 F.3d 1267 (11th Cir. 2006) ..................................................................... 5

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ..................................................................................19, 30

*Edge Sys. LLC v. Aguila*,
   635 F.App'x  897 (Fed. Cir. 2015)....................................................................15

*Federated Title Insur., Inc. v. Ward*,
   538 So.2d 890 (Fla. 4th DCA 1989) ................................................................18

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .........................................................................16

*Fong Kai Bus. Group Co., Ltd v. Shade Saver, Inc.*,
    2019 WL 12304385 (M.D.Fla. Apr. 9, 2019).....................................26

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA,*
    590 U.S. 432 (2020) ............................................................xii, 6, 7, 9

*Ginsberg v. Vitamins Because LLC*,
    2021 WL 7707264 (S.D.Fla. June 9, 2021) (Williams, J.); ............. 17, 18, 20, 28

*Harrisson v. NCL (Bahamas) Ltd.*,
    691 F.3d 1308 (11th Cir.2012) ........................................... xii, xiv, 8

*Harrisson v. NCL (Bahamas) Ltd.*,
    707 F.3d 1254 (11th Cir.2013) ..................................................... xii

*Hewko v. Genovese*,
    739 So.2d 1189 (Fla. 4th DCA 1999) ..............................................28

*Hodgson v. Seven Seas Cruises*,
    2020 WL 6120478 (S.D. Fla. Mar. 27, 2020) (Williams, J.) .....................7, 8, 10

*In re Humana Inc. Managed Care Litig.*, 2
    85 F.3d 971 (11th Cir. 2002). .......................................................5, 19

*In re Loudermilch*,
    158 F.3d 1143 (11th Cir. 1998) ..................................................... xiv

*Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*,
    921 F.3d 1291 (11th Cir. 2019) ............................................. xii, xiii

*It Works Mktg., Inc. v. Melaleuca, Inc.*,
    2021 WL 1650266 (M.D. Fla. Apr. 27, 2021)....................................22

*Jackson v. Shakespeare Found., Inc.*,
    108 So.3d 587 (Fla. 2013) .......................................................21, 22

*Karlen v. Gulf & Western Indust., Inc.*,
    336 So.2d 461 (Fla. 3rd DCA 1976) ...................................................................18

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) ...........................................................16, 17

*Koechli v. BIP Intern., Inc.*,
    870 So.2d 940 (Fla. 1st DCA 2004).........................................................20, 25, 27

*Lash & Goldberg LLP v. Clarke*,
    88 So.3d 426 (Fla. 4th DCA 2012) ...................................................................24

*Lavigne v. Herbalife, Ltd.*,
    967 F.3d 1110 (11th Cir. 2020) .........................................................15, 20, 22

*Lawson v. Life of the S. Ins. Co.*,
    648 F.3d 1166 (11th Cir. 2011)...........................................................5, 17

*Leidel v. Coinbase, Inc.*,
    729 F.App'x 883 (11th Cir. 2018) ..................................... 19, 20, 21, 22, 13, 24

*Liberty Comm., Inc. v. MCI Telecom. Corp.*,
    733 So.2d 571 (Fla. 5th DCA 1999) ...................................................................26

*Lindo v. NCL (Bahamas), Ltd.*,
    652 F.3d 1257 (11th Cir. 2011) ...................................................................29

*McCarthy v. Azure*,
    22 F.3d 351 (1st Cir. 1994)...........................................................17, 25

*Mejia v. Jurich*,
    781 So.2d 1175 (Fla. 3d DCA 2001) ...........................................................26

*Mendez v. Hampton Ct. Nursing Ctr., LLC*,
    203 So.3d 146 (Fla. 2016) ...........................................................28

*Mgmt. Computer Controls, Inc. v. Charles Perry Const, Inc.*,
    743 So.2d 627 (Fla. 1st DCA 1999)...........................................................22

*Mims v. Glob. Credit & Collection Corp.*,
  803 F.Supp.2d 1349 (S.D.Fla.2011) ...................................................27

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
  473 U.S. 614 (1985) ................................................................16, 17

*Mock v. Bell Helicopter Textron, Inc.*,
  373 F.App'x 989 (11th Cir. 2010) ...................................................15

*Morgan v. Sundance, Inc.*,
  596 U.S. 411, 418 (2022)...............................................................19

*New v. Sports & Recreation, Inc.*,
  114 F.3d 1092 (11th Cir. 1997) ..................................................... xiii

*Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard B.V.*,
  855 F.App'x 468 (11th Cir. 2021) ...................................................... 8

*Onemata Corp. v. Rahman*,
  2021 WL 5175544 (S.D. Fla. Oct. 12, 2021) (Dimitrouleas, J.) ........................26

*Outokumpu Stainless USA, LLC v. Converteam SAS*,
  902 F.3d 1316 (11th Cir. 2018) ........................................... 6, 7, 8, 9, 11, 12, 29

*Outokumpu v. Coverteam SAS*,
  2022 WL 2643936 (11th Cir. July 8, 2022) ...................................................... 7

*PacifiCare Health Sys., Inc. v. Book*,
  538 U.S. 401 (2003). ...................................................................... 5

*Pick Kwik Food Stores, Inc. v. Tenser*,
  407 So.2d 216 (Fla. 2d DCA 1981) ..................................................17

*Rolls-Royce PLC v. Royal Carr. Cruises LTD.*,
  960 So.2d 768 (Fla. 3d DCA 2007) ..................................................23

*Republic of Kazakhstan v. Chapman*,
  585 F.Supp.3d 597 (S.D.N.Y.2022)................................................... xii

*Schreiber v. Ally Fin. Inc.*,
  634 F. App'x 263 (11th Cir. 2015) .................................................. 19, 20, 24, 25

*Seifert v. U.S. Home Corp.*,
  750 So.2d 633 (Fla. 1999) ................................................................20, 21, 23

*Suazo v. NCL (Bahamas), Ltd.*,
  822 F.3d 543 (11th Cir. 2016) ........................................................... 6

*Tartell v. Chera*,
  668 So.2d 1105 (Fla. 4th DCA 1996) ...............................................28

*Telecom Italia, Spa v. Wholesale Telecom Corp.*,
  248 F.3d 1109 (11th Cir. 2001) .......................................................21

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ...........................................................................11

*Variable Annuity Life Ins. Co. v. Dull*,
  2009 WL 3064750 (S.D.Fla. Sept. 22, 2009) (Marra, J.) ..................26

*Velchez v. Carnival Corp.*,
  331 F.3d 1207 (11th Cir. 2003) ............................................... xiii, xiv

*Volt Info. Scis., Inc. v. Bd. Of Tr. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ....................................................................15, 19

*Watt v. NCL (Bahamas) Ltd.*,
  2010 WL 2403107 (S.D. Fla. June 15, 2010) (Moreno, J.) ................13

*Wexler v. Solemates Marine, Ltd.*,
  2017 WL 979212 (S.D. Fla. Mar. 14, 2017) (Bloom, J.)....................14

*Williams v. NCL (Bahamas) Ltd.*,
  774 F.Supp.2d 1232 (S.D. Fla. 2011)...............................................13

*Williams v. NCL (Bahamas) Ltd.*,
  686 F.3d 1169 (11th Cir. 2012) .......................................................13

*Williams v. NCL (Bahamas) Ltd.*,
    691 F.3d 1301 (11th Cir. 2012) ........................................................13

*Williams v. NCL (Bahamas) Ltd.*,
    No. 11-12150, Doc 124-2 (11th Cir. Feb. 15, 2013) ........................ xiii

*Ytech 180 Units v. Certain Underwriters at Lloyd's*,
    359 F.Supp.3d 1253 (S.D. Fla. 2019).................................................. 4

*Zamora v. E. Coast Right of Way Maint., Inc.*,
    2008 WL 4716909 (M.D. Fla. Oct. 23, 2008) (Steele, J.)..................27

**Statutes**

28 U.S.C. § 1331.................................................................................... xii

28 U.S.C. § 1447(c) .........................................................................xiv, xv

28 U.S.C. § 1447(d) .......................................................... xiv, xv, 1, 5, 30

9 U.S.C. § 16(a)(1)(c) .......................................................................... xiii

9 U.S.C. § 203 ...................................................................... xii, xiii, 13

9 U.S.C. § 205 ................................... xii, xiii, xv, 4, 7, 10, 11, 12, 13, 30

9 U.S.C. § 206 ........................................................................xv, 10, 13

Fla. Stat. § 517.301 ................................................................................ 3

Fla. Stat. § 772.103 ............................................................................... 3

Fla. Stat. § 895.01 ................................................................................. 3

Fla. Stat. § 895.05(6) ............................................................................ 3

**Rules**

11th Cir. R. 28-1(g).................................................................................. i

11th Cir. R. 32-4 ............................................................................... xii

Fed.R.App.P. 34(a) ............................................................................ i

**Other Authorities**

Convention, 21 U.S.T. 2517 (1970) ..................................................... 6

## JURISDICTIONAL STATEMENT[1]

Appellee's claims are based on Florida law. The District Court did not have jurisdiction under 28 U.S.C. § 1331. Nor did it have subject matter jurisdiction under 9 U.S.C. § 203, and thus removal jurisdiction under 9 U.S.C. § 205.

"On its face, § 203 creates jurisdiction: it provides that federal courts 'shall have original jurisdiction' over certain actions." *Republic of Kazakhstan v. Chapman*, 585 F.Supp.3d 597, 604 (S.D.N.Y.2022) (citing 9 U.S.C. § 203); *see Harrisson v. NCL (Bahamas) Ltd.*, 691 F.3d 1308 at 1310 n.2 (11th Cir.2012) ("§ 203 provides federal district courts with original jurisdiction over actions that fall under the Convention"), *vacated as moot*, 707 F.3d 1254 (11th Cir.2013).

"Section 205, meanwhile, on its face authorizes removal: it provides that certain actions may be removed to federal court." *Chapman*, 585 F.Supp.3d at 604 (citing 9 U.S.C. § 205; *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020)). "Section 205 … provides federal courts with removal jurisdiction over actions relating 'an arbitration agreement ... falling under the Convention.'" (D.E 21 at p.8) (quoting 9 U.S.C. § 205); *see Cogdell v. Wyeth*, 366 F.3d 1245, 1247-48 (11th Cir.2004) ("[R]emoval jurisdiction is 'a species' of subject matter jurisdiction" but "are not one and the same"); *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l*

---

[1] *See* 11th Cir. R. 32-4 and 28-1(g).

*GmbH*, 921 F.3d 1291, 1299-300 (11th Cir.2019) ("[R]emoval jurisdiction is not necessarily coterminous" or "coincident with original subject-matter jurisdiction"), *overruled by Corporations AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876, 885 (11th Cir.2023).

While § 205 "permits removal and explicitly abrogates the well-pleaded complaint rule … jurisdiction must still be found under § 203." *Chapman*, 585 F.Supp.3d at 604. "The relevant inquiry under § 203 is … whether the 'action or proceeding fall[s] under the Convention' itself." *Tropical INPROTSA*, 921 F.3d at 1299 (quoting 9 U.S.C. § 203).

The District Court concluded that the first jurisdictional requirement—that there be "an agreement in writing within the meaning of the Convention"—was not met and no equitable exceptions applied, and therefore, Wu's "action" to compel arbitration did not "fall[] under the Convention." 9 U.S.C. § 203; *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir.2005). Accordingly, the District Court lacked subject matter jurisdiction. (D.E. 21 at pp.7, 13). *See B & B Jewelry, Inc. v. Pandora Jewelry LLC*, 247 F.Supp.3d 1283, 1287 (S.D.Fla.2017) ("Thus, it cannot be said that at the time of removal, there was an arbitration agreement between Plaintiff and these named Defendants that constituted a 'valid agreement in writing within the meaning of the Convention' such as to confer subject-matter jurisdiction on this Court'").

This Court does not have jurisdiction to review the Remand Order (D.E. 21) which (i) denied Wu's Petition to Compel Arbitration and Notice of Removal ("Petition") (D.E. 1), (ii) granted Appellee's Motion to Remand (D.E. 13), and (iii) closed the case. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable *on appeal or otherwise*") (emphasis added); 28 U.S.C. § 1447(c) ("The State court may thereupon proceed with such case").

The District Court's Order was a product of a motion to remand under § 1447(c). (D.E. 13 at p.2). *See Velchez v. Carnival Corp.*, 331 F.3d 1207, 1209 (11th Cir.2003) ("even if we were convinced that Carnival is correct and that the district court's decision is wrong, we are precluded by § 1447(d) from doing anything about it because the district court's action, right or wrong, was based on a timely § 1447(c) motion"); *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1095–97 (11th Cir.1997) (explaining that district court orders need not invoke "magic words" to preclude review under § 1447(d) so long as the order is based on jurisdictional grounds); *Cogdell*, 366 F.3d at 1247–49; *Powerex Corp. v. Reliant Engery Services Inc.*, 551 U.S. 224, 234 (2007); *Williams v. NCL (Bahamas) LTD.*, No. 11-12150, Doc 124-2 (11th Cir. Feb. 15, 2013); *Harrisson*, 691 F.3d at 1312-13.

This Court also does not have jurisdiction under 9 U.S.C. § 16(a)(1)(c) because the denial of Wu's Petition "accompanied a remand for lack of subject

matter jurisdiction." *Dahiya v. Talmidge Intern., Ltd.*, 371 F.3d 207, 210 (5th Cir.2004); *see* 9 U.S.C. § 206 ("A court *having jurisdiction under this chapter* may direct that arbitration be held in accordance with the agreement") (emphasis added). "Motions to stay proceedings and to compel arbitration will be common if not universal in cases removed under § 205. … Recognizing appellate review of such remand orders under § 16 would circumvent § 1447(d) by affording review of remand orders issued in nearly every case removed under § 205." *Id*.

Whether the District Court erred is irrelevant. *See Velchez*, 331 F.3d at 1209; *Sports & Recreation, Inc.*, 114 F.3d at 1095-96 (11th Cir.1997) ("Cases remanded for lack of jurisdiction are immune from review even if the district court's decision is clearly erroneous"); *In re Loudermilch*, 158 F.3d 1143, 1145 (11th Cir.1998) ("Thus, if the district court remands a case based on reasons set forth in section 1447(c), no review may be had: whether the district court's decision was correct or not makes no difference").

As explained below, the District Court correctly denied Wu's Petition and remanded on jurisdictional grounds, thus precluding review.

## <u>REFERENCES TO THE RECORD</u>

Appellee shall refer to the record in the same manner as Appellant. (Doc 23).

## <u>STATEMENT OF THE ISSUE(S)</u>

1.      Whether the District Court correctly held that an action based on an arbitration clause contained in the Limited Membership Interest Subscription, Sale and Purchase Agreement between FIBF and Appellee ("Purchase Agreement") – which Wu is neither a signatory nor party to – did not fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention").

2.      Whether the District Court correctly held that the doctrines of equitable estoppel, agency, or third-party beneficiary status did not apply to allow Wu, a non-signatory to the Purchase Agreement, to compel arbitration of Appellee's claims under the Convention.

3.      Whether the District Court correctly denied Petition and remanded the case when the District Court lacked subject matter jurisdiction under the Convention.

4.      Whether the Order is appealable notwithstanding 28 U.S.C. § 1447(d).

## <u>STATEMENT OF THE CASE</u>

### A. Relevant Factual Background and State Court Proceedings

Between 2013 and 2021, Fu Jing "Leo" Wu ("Wu") and Benny Lam ("Lam") misappropriated and diverted tens of millions of dollars from unsuspecting EB-5 visa applicants who collectively invested over $62 million into Florida Immigration

Building Funding LLC ("FIBF") and Triton 7880 LLC. (D.E. 8-18 at pp.5-19). The multi-million-dollar investment was intended for the acquisition and development of a mixed-use commercial project in Miami ("Triton Center Project"), which was supposed to serve as the job creation venture through which the investors would qualify for permanent residency under the federal EB-5 visa program. (*Id*. at pp.5-7). Visa eligibility hinged on proper utilization of investor funds. (*Id*. at pp.5-9).

The underlying action stems from a derivative lawsuit filed by Chun Liu ("Mr. Liu") on behalf of FIBF in October 2020 following rebuffed efforts to obtain books and records from FIBF ("Receivership Action"). In April 2021, the state court appointed Michael I. Goldberg as receiver over FIBF ("Receiver"). (*Id*. at p.3). Thereafter, the Receiver filed an ancillary complaint against Wu and Lam for, among other things, fraud (D.E. 15-1), which Wu never sought to arbitrate.

In December 2022, the state court approved a global settlement between the Receiver, Wu, and his entities (D.E. 8-5 at pp.50-64), wherein the Receiver would, *inter alia*, for the benefit of the defrauded investors, liquidate the Triton Center Project and a ±16-acre site in El Portal ("Trailer Park Property") acquired by an entity owned by Wu with over $13 million in investor funds stolen from FIBF. (D.E. 8-18 at pp.15-16). In exchange, Wu would receive up to $5 million dollars from the net sale proceeds. (D.E. 8-5 at p.53). While the settlement fully resolved the Receiver's claims against Wu, it did not bar or enjoin other actions against him.

2

In March 2023, Mr. Liu individually and on behalf of all others similarly situated (the "Class") (collectively, "Appellee") commenced a class action lawsuit, as amended ("Amended Complaint") (D.E. 8-18), against Wu and Lam, individually, for common law fraud, violation of Fla. Stat. § 517.301 (Florida SIPA), Fla. Stat. §§ 772.103 and 895.01, *et seq*. (Florida RICO), and conspiracy to violate Florida RICO. (*Id*. at pp.21-53). Appellee also filed a motion for asset freeze under Fla. Stat. § 895.05(6) to restrain the $5 million dollar settlement to Wu. (D.E. 8-5).

Facing a potential loss of the settlement payout, Wu filed a motion to compel arbitration in the class action (D.E. 8-62), relying on an arbitration clause contained in the Purchase Agreement which Wu is neither a signatory nor party to. (*Id*. at pp.21-34). However, because Wu actively participated in the state court litigation and availed himself of the benefits of discovery before seeking arbitration, he forfeited any alleged arbitration rights under binding Florida law. (D.E. 8-66 at pp.6-7; D.E. 13 at pp.17-19).

**B. <u>Wu's Removal of the Class Action Suit to the District Court</u>**

Upon recognizing the fatal impact of Florida law on his efforts to compel arbitration in state court, on April 24, 2023, Wu removed the action to the District Court through the filing of his Petition. (D.E. 1).

On January 5, 2024, the District Court entered its Remand Order (D.E. 21) denying Wu's Petition and granting Appellee's Motion to Remand. (D.E. 13, 15).

On February 5, 2024, Wu filed his Notice of Appeal seeking review of the District Court's denial of his Petition. (D.E. 24). Appellee moved to dismiss the appeal for lack of jurisdiction (Doc 11, 16), which is carried with the case. (Doc 22).

## SUMMARY OF THE ARGUMENT

Appellee's lawsuit was filed in state court against Wu and Lam, individually. Wu removed the action to the District Court using the Convention as a mere pretext for jurisdiction, relying on an arbitration clause contained in a Purchase Agreement which Wu is neither a party nor signatory to. All counts alleged in Appellee's Amended Complaint are based on Florida common law and state statutes and present non-federal issues that should be left to state court adjudication. Appellee neither seeks to enforce contractual rights under the Purchase Agreement nor use the express terms of the Purchase Agreement to bring its claims.

Four jurisdictional requirements must be satisfied for removal under 9 U.S.C. § 205, the first being an "an agreement in writing within the meaning of the Convention." *Bautista*, 396 F.3d at 1294 n.7. "Without an agreement in writing that satisfies this provision, there is no subject matter jurisdiction." *Ytech 180 Units v. Certain Underwriters at Lloyd's*, 359 F.Supp.3d 1253, 1261–62 (S.D.Fla.2019). Having concluded "that the arbitration clause in the Purchase Agreement does not meet all four factors required for an arbitration agreement to be covered under the Convention, as there is no agreement in writing within the meaning of the

4

Convention, and no exceptions apply which could allow the nonsignatory defendant to compel arbitration", the District Court properly denied Wu's Petition and granted the Motion to Remand. (D.E. 21 at p.13).

By holding that the first jurisdictional prerequisite under *Bautista* was not met, and no state law exceptions to the signatory requirement applied, the District Court lacked subject matter jurisdiction to compel arbitration under the Convention and properly remanded. As such, the Order is not reviewable. 28 U.S.C. § 1447(d).

## STANDARD OF REVIEW

The Remand Order is not reviewable by this Court. 28 U.S.C. § 1447(d). Notwithstanding, this Court reviews *de novo* a district court's order denying a motion to compel arbitration. *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1170 (11th Cir.2011). Separately, the Court reviews a district court's decision declining to apply equitable estoppel for abuse of discretion. *Dresdner Bank AG v. M/V OLYMPIA VOYAGER*, 465 F.3d 1267, 1273 (11th Cir.2006); *see also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir.2002), *rev'd on other grounds, PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003).

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    THE DISTRICT COURT DID NOT ERR BY FAILING TO CONSIDER WHETHER THE PURCHASE AGREEMENT "RELATES" TO APPELLEE'S CLAIMS BECAUSE THE FIRST JURISDICTIONAL PREREQUISITE WAS NOT MET.**

"In 1970, the United States acceded to the New York Convention, and

Congress enacted implementing legislation in Chapter 2 of the FAA." *GE Energy*, 590 U.S. at 439. The two texts are read harmoniously. *Corporacion*, 66 F.4th at 885.

Article II, the only article in the Convention that addresses arbitration agreements, applies at the "initial arbitration-enforcement stage." *GE Energy*, 590 U.S. at 438; *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir.2016). Under Article II(1), "[e]ach Contracting State shall recognize an *agreement in writing* under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, … concerning a subject matter capable of settlement by arbitration." Convention, 21 U.S.T. 2517 (1970) (emphasis added). Article II(2) provides that "[t]he term *'agreement in writing'* shall include an arbitral clause in a contract or an arbitration agreement, *signed by the parties*." *Id.* (emphasis added). "Article II(3) states that courts of a contracting state 'shall ... refer the parties to arbitration' when *the parties to an action* entered into a written agreement to arbitrate." *GE Energy Power*, 590 U.S. at 440 (emphasis added).

Whether an action between a signatory and non-signatory relates to a signed arbitration agreement sufficient to establish federal subject matter jurisdiction, and whether the non-signatory may compel arbitration under that arbitration agreement, are separate inquiries that "require a bifurcated analysis." *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1320 (11th Cir.2018) ("*Outokumpu II*"),

*rev'd and remanded sub nom.*, *GE Energy*, 590 U.S. 432.[2]

"Where jurisdiction is challenged on a motion to remand, the district court shall first perform a limited inquiry on the face of the pleadings and the removal notice to determine whether the suit 'relates to' an arbitration agreement falling under the Convention under the factors articulated in *Bautista*." *Id.* (citing *Bautista*, 396 F.3d at 1294 n.7). "On a motion to compel arbitration, the district court must engage in a more rigorous analysis of the *Bautista* factors to determine whether the parties before the district court entered into an agreement under the meaning of the Convention to arbitrate their dispute." *Outokumpu II* at 1320.

This Court in *Outokumpu II* established a "two-step inquiry for analyzing jurisdiction under Section 205." *Hodgson v. Seven Seas Cruises*, 2020 WL 6120478, at *2 (S.D.Fla. Mar. 27, 2020) (Williams, J.); *Outokumpu II* at 1324 ("[U]pon removal the district court shall engage in a two-step inquiry to determine jurisdiction") (citing 9 U.S.C. § 205). "The first part of the inquiry requires the court to determine whether the notice of removal describes an arbitration agreement that may fall under the convention." *Hodgson*, 2020 WL 6120478, at *3. "To do so, the

---

[2] *Outokumpu* pertained to contracts with an identical arbitration clause between a steel plant and a general contractor for motor supply. The motors were produced by the general contractor's subcontractor, who did not sign the contracts, but was a defined party. A list appended to each contract also identified the subcontractor's predecessor as a potential subcontractor. Following motor failures, the steel plant sued the subcontractor, who then sought to enforce the arbitration claim. *See Outokumpu v. Coverteam SAS*, 2022 WL 2643936, at *1-3 (11th Cir. July 8, 2022).

district court employs the test articulated in *Bautista* to the four corners of the arbitration agreement." *Outokumpu II* at 1324; *see Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard B.V.*, 855 F.App'x 468, 472 (11th Cir.2021) ("An arbitration agreement falls under the Convention when four jurisdictional prerequisites are ... met"). "For this step, the Court's analysis is limited to whether the removing party has articulated a non-frivolous basis that the *Bautista* factors are satisfied upon a review of the pleadings and removal notice." *Hodgson*, 2020 WL 6120478, at *3. "Second, the district court must determine whether there is a non-frivolous basis to conclude that agreement sufficiently 'relates to' the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case." *Id.*

Wu contends that the District Court erred in its analysis because "the inquiry on step 1 enunciated in *Outokumpu II* is not whether Wu can enforce the Arbitration Agreement", but "whether the Arbitration Agreement otherwise fell under the Convention." (Doc 23 at p.14). Yet, that is exactly what the District Court did when it "reviewed the arbitration clause to determine if it provided any basis for the district court's jurisdiction *in the first place*." *Harrison*, 691 F.3d at 1312 (emphasis added). Because the Convention "uses mandatory language", a non-signatory seeking to compel arbitration under the Convention must meet the "prerequisites to establish the district court's subject matter jurisdiction." *Czarina, L.L.C. v. W.F. Poe*

8

*Syndicate*, 358 F.3d 1286, 1292 (11th Cir.2004).

Wu is neither a signatory nor a party to the Purchase Agreement. *See* D.E. 21 at p.7 ("Wu is not a signatory to the Purchase Agreement and, therefore, to the arbitration clause"). Nor is Wu named or identified in the Purchase Agreement. FIBF, the only other signatory to the Agreement, is not a named party or otherwise involved in the class action, and no claims have been asserted against it. (*Id.* at p.10). Therefore, based on "a limited inquiry on the face of the pleadings and the removal notice", the District Court correctly found that there there was no "agreement in writing" (Art. II(I)) "signed by the parties" (Art. II(2)) falling "within the meaning of the Convention." *Outokumpu II* at 1320; *Bautista*, 396 F.3d at 1294.

Nevertheless, a non-signatory may still seek arbitration under the Convention through an application of relevant state law equitable doctrines. *GE Energy*, 590 U.S. at 442-45 ("Article II(3) speaks to who may request referral under those agreements, and it does not prohibit the application of domestic law"). Thus, to determine whether Wu, despite his non-party and non-signatory status, could compel arbitration "within the meaning of the Convention", the District Court was required to evaluate the "traditional principles of state law … that authorize the enforcement of a contract by a nonsignatory." *GE Energy Power*, 590 U.S. at 437.

As articulated in *Outokumpu II*, the next step in the "bifurcated analysis" is determining whether a plaintiff may be compelled to arbitrate its claims under 9

9

U.S.C. § 206. *Hodgson*, 2020 WL 6120478, at *5. "For motions to compel arbitration, … courts must engage in a 'more rigorous' application of the *Bautista* factors than during the jurisdictional analysis." *Id*. This is effectively what the District Court did. Through an examination of the "limited exceptions … that allow nonsignatories to a contract to compel arbitration", the District Court ultimately found no applicable exceptions under Florida law, and therefore denied Wu's Petition. (D.E. 21 at pp.7, 13).

To the extent the District Court failed to conduct the "next step" of the jurisdictional inquiry under § 205 to "determine if [the] agreement 'relates to' the case" (Doc 23 at p.14), there was no error, as the Court already found that the first jurisdictional prerequisite was not met. In fact, the District Court did not "address Plaintiff's affirmative defense of waiver because the arbitration clause in question does not fall under the Convention." (D.E. 21 at p.13 n.5).

Moreover, additional analysis under the "next step" would not have altered the District Court's conclusion that "no exceptions appl[ied] which could allow the nonsignatory defendant to compel arbitration." (*Id*. at p.13). In its evaluation of the equitable estoppel exception, the District Court determined that Appellee's claims against Wu neither "rely on the terms of the Purchase Agreement containing the arbitration clause" nor "seek to enforce [Plaintiff's] contractual rights under the Purchase Agreement." (*Id*. at p.8). Thus, the Purchase Agreement is not sufficiently

10

"related to" the dispute such that it could conceivably affect the outcome of this case. *Outokumpu II* at 1325. While "the 'relates to' language of Section 205 provides for broad removability of cases to federal court … the link between the arbitration agreement and the dispute is not boundless." *Outokumpu II* at 1323.

Notably, Wu never raised this argument during the proceedings below. *See Cont'l Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir.1991) ("An argument not made is waived"); *Am. Family Life Ass. Co. of Columbus v. Hubbard*, 759 F.App'x 899, 906 (11th Cir.2019) ("The associates waived this argument, … because they failed to raise it in their opposition to the motion to compel arbitration"); *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir.2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court"). None of Wu's filings in the below proceedings argue or even mention the "relates to" analysis articulated in *Outokumpu. See, e.g.,* D.E. 1, 6, 14. In fact, aside from addressing whether a non-signatory can enforce an arbitration agreement based on certain domestic-law doctrines, Wu's Civil Appeal Statement identifies entirely different issues than those now asserted in his Brief. (Doc 8 at p.2).

Rather, Wu devoted significant effort to persuading the District Court that the "look through rule" in *Vaden v. Discover Bank*, 556 U.S. 49 (2009) supplied federal jurisdiction. Recognizing his misapprehension of the law, Wu shifts to a new

argument: that because the arbitration clause "could conceivably affect the outcome" of Appellee's case, the District Court was obligated to compel arbitration (Doc 23 at pp.11-14), notwithstanding the "rigorous" inquiry necessary to make such a determination. *Outokumpu II* at 1325 ("this inquiry is necessarily more rigorous than on a motion to remand because the district court must determine whether the parties before the court agreed to arbitrate their dispute").

Wu's assertion that "the District Court erred by refusing to compel arbitration because the four prerequisites for compelling arbitration were met" (Doc 23 at p.15) incorrectly assumes that if all four *Bautista* factors are met to establish removal jurisdiction under § 205, the district court's inquiry ends there, necessitating referral to arbitration. However, Wu overlooks the "bifurcated analysis" in *Outokumpu*, which is intended to align with "removal jurisprudence." *Id.* at 1325.

"The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205." *Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir.2002). While § 205 provides federal courts with removal jurisdiction over actions "falling under the Convention", it does not confer subject matter jurisdiction. *Del Monte Int'l, GmbH v. Ticofrut S.A.*, 2017 WL 4876204, at *1 (S.D.Fla. Sept. 27, 2017) (quoting *Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.,* 169 F.Supp.3d 523, 528 (S.D.N.Y.2016)); *see Cogdell*, 366 F.3d at 1247-48.

Whether the District Court could compel arbitration was predicated on the "court *having jurisdiction*" over an "action or proceeding *falling under* the Convention." 9 U.S.C. §§ 203, 206 (emphasis added). Ultimately, the District Court denied Wu's Petition because "the arbitration clause in the Purchase Agreement [did] not meet all four factors required for an arbitration agreement to be covered under the Convention, as there is no agreement in writing within the meaning of the Convention, and no exceptions appl[ied] which could allow the nonsignatory defendant to compel arbitration." (D.E. 21 at p.13). By finding that the first *Bautista* jurisdictional requirement—whether "there is an agreement in writing within the meaning of the Convention"—was not met, the District Court plainly made a determination that it lacked subject matter jurisdiction under the Convention's implementing legislation. *Bautista*, 396 F.3d at 1294 n.7. As a result, Wu's "action" to compel arbitration did not "fall[] under the Convention." 9 U.S.C. § 203.

Wu "removed this case solely on the grounds that the Court ha[d] jurisdiction pursuant to the Convention to enforce the arbitration agreement." *Williams v. NCL (Bahamas) Ltd.*, 774 F.Supp.2d 1232, 1237 (S.D.Fla.2011), *rev'd and vacated,* 686 F.3d 1169 (11th Cir.2012), *withdrawn and vacated,* 691 F.3d 1301 (11th Cir.2012); *see* D.E. 21 at p.13 ("Wu's only basis for federal jurisdiction … [was] Section 205"). However, "[b]ecause the arbitration agreement is unenforceable, removal pursuant to the Convention Act – the sole basis for removal – was not proper." *Watt v. NCL*

*(Bahamas) Ltd.*, 2010 WL 2403107, at *3 (S.D.Fla. June 15, 2010) (Moreno, J.).

Without an independent basis for subject matter jurisdiction, the District Court remanded the case back to state court. (D.E. 21 at p.13). *See Beiser*, 284 F.3d at 675 ("If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court").

Subject matter jurisdiction in this case depended on the applicability of the arbitration clause to Appellee's claims against Wu. *See Wexler v. Solemates Marine, Ltd.*, 2017 WL 979212, at *3 (S.D.Fla. Mar. 14, 2017) (Bloom, J.). In determining whether the Purchase Agreement fell "within the meaning of the Convention" under *Bautista*, the District Court correctly assessed the arbitrability of Appellee's claims. Concluding that "compelling arbitration of Plaintiff's claims to be inappropriate under the Convention," the District Court properly denied Wu's Petition and remanded the case for lack of jurisdiction. (D.E. 21 at p.13).

## II. THE DISTRICT COURT DID NOT ERR BY FAILING TO DELEGATE THE QUESTION OF ARBITRABILITY TO AN ARBITRAL TRIBUNAL BECAUSE WU WAIVED THIS ARGUMENT BY ADVANCING IT IN A FOOTNOTE ONLY.

Wu's assertion that the arbitration clause delegated the issue of arbitrability to an arbitrator, thereby depriving the District Court of the authority to consider it, was briefly mentioned once in the below proceedings in a footnote. (D.E. 14 at p.4 n.2). Because Wu made this "argument in passing in a footnote only and does not

14

elaborate on it in any further detail," it is deemed waived. *Mock v. Bell Helicopter Textron, Inc.*, 373 F.App'x 989, 992 (11th Cir.2010); *see Brown v. U.S.*, 720 F.3d 1316, 1333 n.1 (11th Cir.2013) ("[A]n issue only raised in a footnote is not properly raised before this Court and is waived"); *Edge Sys. LLC v. Aguila*, 635 F.App'x 897, 903 (Fed.Cir.2015) ("Arguments not made in the court or tribunal whose order is under review are normally considered waived"); *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1120 n.7 (11th Cir.2020) ("[W]e do not review arguments that were raised only in a footnote without supporting argument").

Even if this argument was not waived, whether equitable doctrines could be applied to allow a non-signatory to compel arbitration is a threshold issue going to the very existence of the contract and thus determined by the district court. *See Lavigne*, 967 F.3d at 1120 n.7 ("how does one go about delegating the question of equitable estoppel? By definition, there is no contract, which is, after all, why one of the parties is demanding equitable estoppel. So, if there is no contract, how can the issue of equitable estoppel be delegated in the first place?"). Wu fails to explain how such a delegation is possible. *Id*. Accordingly, his arguments are waived.

## III.   THE DISTRICT COURT CORRECTLY HELD THAT WU COULD NOT ENFORCE THE ARBITRATION CLAUSE UNDER THE LIMITED EXCEPTIONS TO THE SIGNATORY REQUIREMENT.

The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. Of Tr. of*

*Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). "FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Id*. "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir.2004) ("FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate"); *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir.2003) ("federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties or to the determination of who is bound by the arbitration agreement").

"The determination of the propriety of a motion to compel arbitration pursuant to [the FAA] is a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute." *Klay*, 389 F.3d at 1200; *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 n.9 (11th Cir.2011) ("Under both the FAA and the Convention the 'first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985)). "That means the parties will not be required to arbitrate when they have not agreed to do so." *Doe*, 657 F.3d at 1214 (quotations omitted); *see AT&T Techn., Inc. v. Comm. Workers of*

16

*Am.*, 475 U.S. 643, 648 (1986). "The second step … involves deciding 'whether legal constraints external to the parties' agreement foreclosed arbitration." *Klay*, 389 F.3d at 1200 (quoting *Mitsubishi*, 473 U.S. at 626).

There is no bilateral "agreement in writing" signed by Appellee and Wu in which they expressly agreed to resolve their disputes through arbitration. Wu is neither a party, much less signatory, to the Purchase Agreement, and thus did not provide consideration in exchange for the arbitration clause sought to be enforced. *See Pick Kwik Food Stores, Inc. v. Tenser*, 407 So.2d 216, 218 (Fla. 2d DCA 1981) ("A binding contract requires consideration"). "The right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson*, 648 F.3d at 1168. "[Wu] insists that the law empowers him to shunt [Appellee's] claims into an arbitral forum, despite the fact that, if the shoe were on the other foot, [Appellee] could not force appellant to arbitrate those claims—or any other claims, for that matter." *McCarthy v. Azure*, 22 F.3d 351, 361 (1st Cir.1994). The lack of mutuality of obligation forecloses Wu's attempt to compel arbitration. *Id.*

"Under Florida Law, the general rule is that a non-signatory to an agreement containing an arbitration provision cannot compel a signatory to submit to arbitration." *Ginsberg v. Vitamins Because LLC*, 2021 WL 7707264, at *4 (S.D.Fla. June 9, 2021) (Williams, J.); *see Lawson*, 648 F.3d at 1167–68 ("A rule of contract

17

law is that one who is not a party to an agreement cannot enforce its terms against one who is a party. … strangers to a contract acquire no rights under such a contract") (quotations and citations omitted). "[A]rbitration provisions are personal covenants, usually binding only upon the parties to the covenant." *Federated Title Insur., Inc. v. Ward*, 538 So.2d 890, 891 (Fla. 4th DCA 1989); *see Karlen v. Gulf & Western Indust., Inc*., 336 So.2d 461, 462 (Fla. 3rd DCA 1976) (same).

The District Court correctly found there were no applicable exceptions to the general rule which would permit Wu as a non-party and non-signatory to compel arbitration of Appellee's claims. (D.E. 21 at p.13). For those reasons, Wu cannot rely on the doctrines of equitable estoppel, agency, or third-party beneficiary status.

### A. <u>The Doctrine of Equitable Estoppel Does Not Apply</u>

"Under the doctrine of equitable estoppel, Florida courts have permitted a non-signatory defendant to enforce an arbitration clause against a signatory plaintiff either: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory; or (2) when there are allegations of concerted action by both a nonsignatory and one or more of the signatories to the contract." *Ginsberg*, 2021 WL 7707264, at *5 (quoting *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Florida, Inc.*, 158 So.3d 644, 646 (Fla. 3d DCA 2014)); *see Bailey v. ERG Enter., LP*, 705 F.3d 1311, 1320 (11th Cir.2013).

18

The "lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is to prevent a situation that would fly in the face of fairness." *Humana Inc.*, 285 F.3d at 976 (cleaned up). The reason is clear: arbitration agreements are "as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293 (2002) (quoting *Volt*, 489 U.S. at 478).

### 1. Appellee Does Not Rely on the Purchase Agreement to Assert its Claims Against Wu

"Under Florida law, ... the party seeking to compel arbitration must show both that the plaintiff is relying on a contract to assert its claims and that the scope of the arbitration clause in that contract covers the dispute." *Leidel v. Coinbase, Inc.*, 729 F.App'x 883, 886–87 (11th Cir.2018). "A party relies on the terms of a contract when the party needs the underlying contract to make out his or her claim against the nonsignatory." *Schreiber v. Ally Fin. Inc.*, 634 F.App'x 263, 264–65 (11th Cir.2015) (quotations omitted). "The signatory must attempt to hold the nonsignatory to the terms of the contract." *Id.*

The Purchase Agreement – limitedly referred to as "one of many documents, which, in the aggregate, indicate that money could not be taken from FIBF for purposes aside from the provisions of the loan agreement" (D.E. 21 at 9) – is not

19

attached to the Amended Complaint because Appellee's claims do not rely or depend upon and are not "intimately related" to any terms in the Purchase Agreement. *Cf. Koechli v. BIP Intern., Inc.,* 870 So.2d 940, 945 (Fla. 1st DCA 2004). Appellee's claims, based on common law fraud, Florida SIPA, and Florida RICO, do not seek to enforce or exercise contractual rights under the Purchase Agreement—or seek to rescind it.

"[I]t is not enough for a plaintiff's allegations to 'rely simply on the fact that an agreement exists'; the test is whether they 'rely on or depend on the terms of the written agreement.'" *Lavigne*, 967 F.3d at 1119; *see Ginsberg*, 2021 WL 7707264, at *5–6 ("Reliance on the contract in this context requires that a party must actually depend on the underlying contract to assert its claims") (quoting *Allscripts*, 158 So.3d at 646); *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1343 (11th Cir.2012) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them"); *Schreiber*, 634 F.App'x at 264 ("A mere but-for relationship between plaintiff's claims and the contract is insufficient").

Regarding the scope of an arbitration clause, claims "arising out of or relating to" the contract are described as having a "significant relationship" to the contract. *Leidel*, 729 F.App'x at 887 (quoting *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 638

(Fla.1999); *Jackson v. Shakespeare Found., Inc.*, 108 So.3d 587, 593 (Fla.2013)). "A 'significant relationship' between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship." *Leidel*, 729 F.App'x at 887 (quoting *Jackson*, 108 So.3d at 593). "Rather, a significant relationship exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Id.* (quotations omitted).

Wu makes much ado about Appellee's membership interest in FIBF and the Class's relationship with FIBF, both of which may only exist because of the Purchase Agreement. However, "the mere fact that the dispute would not have arisen *but for* the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." *Seifert,* 750 So.2d at 638 (emphasis added); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir.2001) ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause").

Further, "a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to

21

third parties and the public." *Jackson*, 108 So.3d at 593; *see It Works Mktg., Inc. v. Melaleuca, Inc*., 2021 WL 1650266, at *4 (M.D.Fla. Apr. 27, 2021) ("A signatory does not rely on a contract to assert its claims against a non-signatory when the signatory's claims rely on obligations otherwise imposed by law ... If a law outside of the contract places duties on the non-signatory, then any alleged breaches flow from that law—not the contract") (citing *Leidel*, 729 F.App'x  at 887-88).

Wu's tortious conduct did not arise from the performance of any duties or obligations in the Purchase Agreement, and the dispute does not arise out of the Agreement itself. *See Leidel*, 729 F.Appx at 887; *Lavigne*, 967 F.3d at 1116-17. Rather, Appellee's claims allege that Wu breached duties imposed by Florida statute and common law that are entirely independent of the Purchase Agreement. *See Mgmt. Computer Controls, Inc. v. Charles Perry Const, Inc*., 743 So.2d 627, 632 (Fla. 1st DCA 1999) ("The unfair trade claim is an independent statutory claim … It does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract").

Instead of being utilized to develop the Triton Center Project, Wu diverted millions of dollars of investor funds to himself and insiders in contravention of the loan agreement which investors believed secured their investment. (D.E. 21 at pp.2-4, 9). Wu's fraudulent misuse of FIBF's investor funds, which were designated for a specific purpose but instead used to finance Wu's personal ventures such as the

acquisition of the Trailer Park Property, violated the terms of the loan agreement and EB-5 rules and requirements, not the Purchase Agreement. Wu's misappropriation of investor funds and the misrepresentations made concerning the actual use of those funds are unrelated to the Purchase Agreement, which merely memorialized the sale and purchase of membership interests in FIBF. Thus, construction of the Purchase Agreement is wholly unnecessary for resolution of Appellee's claims. *See Rolls-Royce PLC v. Royal Carr. Cruises LTD.*, 960 So.2d 768, 771 (Fla. 3d DCA 2007); *Seifert*, 750 So.2d at 638.

Wu contends that the District Court's "reference to 'but for' causation in *Leidel* concerned the scope of the arbitration agreement, not the reliance" (D.E. 23 at p.21), but then argues that the Court "did not discuss the scope of the Arbitration Agreement." (*Id.* at p.22). However, the District Court in fact discussed both Appellee's "reliance" and the "scope" of the arbitration clause when it determined that "Plaintiff does not use the express terms of the Purchase Agreement to bring his claims" and although "Plaintiff's claims may 'touch' the Purchase Agreement," a "mere but-for causation falls short of the reliance necessary to apply equitable estoppel." (D.E. 21 at pp.9-10). *See Byers*, 701 F.3d at 1343 ("[F]or a party's claims to rely on a contract, the party must actually depend on the underlying contract to assert the claims … A simple but-for relationship does not constitute the actual

dependence on the underlying contract that equitable estoppel requires"); *see Bailey,* 705 F.3d at 1321–22; *Allscripts*, 158 So.3d at 647.

The District Court found that Appellee "does not seek to enforce his contractual rights under the Purchase Agreement", but rather, Appellee's "claims are based on common law and state statutes." (D.E. 21 at p.9). Thus, no "significant relationship" or "nexus" existed between Appellee's claims and the Purchase Agreement which would fall within the scope of the arbitration clause. *Leidel*, 729 F.App'x at 887. Concluding that "no terms in the Purchase Agreement that Plaintiff claims to have been breached or which Plaintiff seeks to enforce through this suit", the District Court properly found equitable estoppel inapplicable. (D.E. 21 at p.9).

### 2. The Amended Complaint Does Not Allege Interdependent and Concerted Misconduct by Both Wu and Non-Party, FIBF

"[T]he second exception is not implicated when a plaintiff alleges no interdependent and concerted misconduct between a signatory and a non-signatory to the contract *and* when the plaintiff names no signatory as a defendant." *Schreiber*, 634 F.App'x at 265 (emphasis added); *see Lash & Goldberg LLP v. Clarke*, 88 So.3d 426, 428 (Fla. 4th DCA 2012) (same). As noted by the District Court, Appellee neither alleges concerted misconduct between Wu and FIBF in the Amended Complaint nor names FIBF as a party to the class action. (D.E. 21 at p.10). *See Bailey*, 705 F.3d at 1321 ("We have noted, however, that the application of equitable estoppel is appropriate when the signatory raises allegations of substantially

interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract") (quotations omitted).

While Wu may prefer the cited district court decisions extending equitable estoppel to situations where claims have not, in fact, been raised against a signatory defendant, this Court disagrees. *See Schreiber*, 634 F.App'x at 265; *Bailey*, 705 F.3d at 1321 n.12. Thus, Wu "must look only to the first circumstance in which the doctrine of equitable estoppel applies", which the District Court correctly held was inapplicable. *Bailey*, 705 F.3d at 1321.

## B. <u>Agency Principles Do Not Apply</u>

Wu cannot compel arbitration under agency principles because Appellee sued Wu for his own acts of fraud and racketeering. FIBF, the only other party to the Purchase Agreement, is not a named defendant. Appellee "does not make any allegations against FIBF" and "brings all claims against [Wu] in his individual capacity rather than as a representative of FIBF." (D.E. 21 at p.11).

"In Florida, a non-signatory cannot compel arbitration merely because he is an agent of one of the signatories." *Beltre v. Micron Devices, LLC*, 2018 WL 6614284, at *2 (S.D.Fla. Dec. 13, 2018) (Moreno, J.) (citing *Koechli*, 870 So.2d at 944) ("This argument erroneously blurs the legal distinction between individual capacity and representative capacity which is 'a meaningful legal difference'") (quoting *Azure*, 22 F.3d at 360).

Appellee's claims are not for fraud in the inducement. Therefore, even if applicable, the purported non-reliance clauses in the Purchase Agreement serve Wu nothing. To the extent Appellee and Class received anything, it was false and fraudulent. Indeed, the Receiver determined that the Triton Center Project was a fraud from the onset. (D.E. 15-3 at ¶¶66, 82, 93). "Under Florida law, it is well settled that a party cannot contract against liability for his own fraud." *Onemata Corp. v. Rahman*, 2021 WL 5175544, at *4 (S.D.Fla. Oct. 12, 2021) (Dimitrouleas, J.). *See, e.g., Mejia v. Jurich*, 781 So.2d 1175, 1178 (Fla. 3d DCA 2001) ("The existence of a merger or integration clause, … does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement"); *Fong Kai Bus. Group Co., Ltd v. Shade Saver, Inc.*, 2019 WL 12304385, at *5 (M.D.Fla. Apr. 9, 2019) ("[T]here is no distinction between integration and non-reliance clauses … both are wholly insufficient, and only an explicit fraud waiver in a contract will bar a suit for fraud").

Further, it is not enough that Wu and FIBF may be "affiliated." *Variable Annuity Life Ins. Co. v. Dull*, 2009 WL 3064750, at *4 (S.D.Fla. Sept. 22, 2009) (Marra, J.). The Purchase Agreement makes no mention of Wu acting as an agent for FIBF. *See Liberty Comm., Inc. v. MCI Telecom. Corp.*, 733 So.2d 571, 575 (Fla. 5th DCA 1999). FIBF and Wu "are not so close that only by permitting the nonsignatory to invoke arbitration would the evisceration of Agreement between

26

[Plaintiff and FIBF] be avoided. No claims were made against [FIBF] in this action and the Agreement stands as to any matter between the Plaintiffs and [FIBF]." *Zamora v. E. Coast Right of Way Maint., Inc.*, 2008 WL 4716909, at *5 (M.D.Fla. Oct. 23, 2008) (Steele, J.).

The fact that Wu was once in control of FIBF does not mean that he or anyone else is bound to arbitrate claims against him personally. Wu neither received rights nor accepted or assumed any obligations under the Purchase Agreement. *Koechli*, 870 So.2d at 946. Accordingly, the District Court correctly determined that Wu cannot rely on agency principles to compel arbitration. (D.E. 21 at pp.10-11).

### C. <u>Wu is Not a Third-Party Beneficiary of the Purchase Agreement</u>

"Under Florida law, a third party is an intended beneficiary of a contract between two other parties *only if* a direct and primary object of the contracting parties was to confer a benefit on the third party." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir.2005) (emphasis added). "A non-party to a contract containing an arbitration clause may compel parties to the contract to arbitrate if it is determined the non-party is a third-party beneficiary to the contract. … However, a third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a benefit on the third party. … Indeed, a non-party is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that

party belongs." *Mims v. Glob. Credit & Collection Corp.*, 803 F.Supp.2d 1349, 1354 (S.D.Fla.2011) (citations and quotations omitted).

"The contracting parties' intent to benefit the third party must be *specific* and must be *clearly expressed* in the contract in order to endow the third party beneficiary with a legally enforceable right." *Bochese*, 405 F.3d at 982 (emphasis original); *see Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So.3d 146, 148 (Fla.2016). "If the contracting parties had no such purpose in mind, any benefit from the contract reaped by the third party is merely 'incidental,' and the third party has no legally enforceable right in the subject matter of the contract." *Ginsberg*, 2021 WL 7707264, at *9; *see Tartell v. Chera*, 668 So.2d 1105, 1106 (Fla. 4th DCA 1996) ("At most, the appellants are incidental beneficiaries of the contract, not third party beneficiaries which would require that the parties to the contract intended to primarily and directly benefit the appellants").

"In the absence of any 'specific mention' of the third party, it would be extraordinarily difficult for [that party] to establish that under Florida law he was an *intended* beneficiary, since an intent to benefit a third party which must be inferred from contradicted evidence cannot be characterized as 'apparent,' 'direct' or 'primary.'" *Ginsberg*, 2021 WL 7707264, at *9 (emphasis original) (citing *Hewko v. Genovese*, 739 So.2d 1189, 1192 (Fla. 4th DCA 1999)).

Whether Wu qualifies as an "person other than FIBF" under the Purchase Agreement is irrelevant. (Doc 23 at p.29). Appellee's claims focus on Wu's own acts of theft, fraud, and racketing. Absent specific mention of Wu in the Purchase Agreement, Wu cannot establish that he was the primary and direct intended beneficiary of the bargain between Appellee and FIBF. The Purchase Agreement is between Appellee and FIBF only—as evidenced by the preamble which specifically defines "Parties" as the "Subscriber" (Mr. Liu) and the "Company" (FIBF). (D.E. 8-62 at p.21). Unlike the contracts in *Outokumpu*, Wu is not included in the definition of a "party" nor referenced in an addendum or list. *See* n.2, *supra*.

The Purchase Agreement was primarily intended to convey membership interests, not confer a benefit on Wu. Nothing in the Purchase Agreement indicates a "clear intent" by the signatories to benefit Wu by insulating him from fraud or individual misconduct violative of Florida law. Consequently, the District Court correctly concluded that Wu cannot rely on the third-party beneficiary doctrine to compel arbitration. (D.E. 21 at pp.12-13).

## IV. THE ARBITRATION CLAUSE WAS WAIVED

Although not addressed by the District Court (D.E. 21 at p.13 n.5), to the extent Wu could invoke the arbitration clause, FIBF's written waiver and Wu's litigation conduct constituting waiver rendered the arbitration clause "null and void, inoperative or incapable of being performed." *Lindo v. NCL (Bahamas), Ltd.*, 652

F.3d 1257, 1263 (11th Cir.2011) (Article II's "null and void" clause compasses "fraud, mistake, duress, and waiver"). *See* D.E. 13 at 16-19; D.E. 15 at pp.4-5.

<u>**CONCLUSION**</u>

Removal under § 205 is not limitless. When considering questions of arbitration, a court should "not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 534 U.S. at 294. Section 205 does not encompass "frivolous petition[s] for removal." *Beiser*, 284 F.3d at 671.

Accordingly, because (1) there is no "agreement in writing" signed by Appellee and Wu that would "fall" within the meaning of the Convention, (2) the Amended Complaint negates Wu's efforts to enforce the arbitration clause under any applicable state law exceptions to the signatory requirement, and (3) the Remand Order was correctly decided on jurisdictional grounds, it is neither appealable nor reviewable under 28 U.S.C. § 1447(d) and the Court should decline to exercise jurisdiction and properly dismiss this appeal.

Dated: May 29, 2024

READ LAW PLLC

By: /s/ *Alexis S. Read*
Alexis S. Read, Esq.
Fla. Bar No. 98084

PHANG & FELDMAN, P.A.

By: /s/ *Jonathan S. Feldman*
Jonathan S. Feldman, Esq.
Fla. Bar No. 12682

Respectfully submitted,

BARRY S. TURNER P.A.

By: /s/ *Barry S. Turner*
Barry S. Turner, Esq.
Fla. Bar No. 85535

*Attorneys for Plaintiff/Appellee, Chun Liu*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this document complies with the type-volume and page-count limits of Fed.R.App.P. 32 because, excluding the parts of the document exempted by Fed.R.App.P. 32(f) and 11th Cir. R. 32-4, this document thirty (30) pages, and that this document further complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 29, 2024, I electronically filed the foregoing document under Eleventh Circuit Rule 25-3 using the Court's CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

By: /s/ *Alexis S. Read*
Alexis S. Read, Esq.
Fla. Bar No. 98084